CLARA NOTHEM, Appellee, v. CLEM J. VONDERHARR, Appellee,
et al., Appellant.

ATTORNEY AND CLIENT:   General Authority—Settlements.   *Gen-
1  eral* authority in an attorney *to defend the validity of a will*
   does not embrace authority to consent to a *settlement.*   The
   settlement· being a nullity, the decree entered thereon is a
   nullity.

INFANTS: Guardian Ad Litem—Authority—Stipulation of Settle-
2  ment. A guardian ad litem, appointed to defend a minor in the
    probate of a will, has no authority to enter into a stipulation
    of settlement covering the minor's interest.

JUDGMENT: Vacation—Ratification as Bar. One may not, in the
3  absence of a showing of full knowledge of all the material facts,
    be held to have ratified an unauthorized and void judgment
    by receiving benefits thereunder.

*Appeal from Plymouth District Court.—*WILLIAM HUTCH-
INSON, Judge.

JANUARY 20, 1920.

REHEARING DENIED MAY 17, 1920.

THE present action was commenced in partition. A
cross-petition was filed by certain of the defendants, asking
that a certain stipulation and decree be set aside and held
for naught. The rights of the parties in the action of parti-
tion are based upon the decree here attacked. There was
a decree for the plaintiffs as prayed, and the cross-petition-
ers' petition dismissed.—*Reversed and remanded.*

*Milchrist, Scott & Pitkin,* for appellant.

*Kass Bros. & Sievers, J. U. Sammis, J. F. Kass,* and
*Molyneux & Maher,* for appellees.

GAYNOR, J.—On the 13th day of June, 1915, John Henry
Vonderharr died testate, leaving surviving him, as his only
heirs at law, the following named children: Clara No-
them, Clem J., Bernard H., Frank, Henry, and Anton Von-
derharr, Anna Siemonsma, Frances Schnieders, Rosa Sie-
monsma, Mary Plagge, and John Vonderharr, and the
following grandchildren, to wit: Henry Hulsing and Mary
Matthias, children of a deceased daughter; Elizabeth Hul-

sing; and Bernard, Mary, Aloysius, Edward, Lawrence, and Cecelia Vaske, children of Josephine Vaske, the deceased daughter of Henry. His wife had died some years before.

As said before, he died testate, leaving the following will:

"I, John Henry Vonderharr, being of sound and disposing mind and memory, do hereby make, publish and declare this instrument as and for my last will and testament, in manner following:

"I hereby will, devise and bequeath all my property, real and personal, in manner following, and hereby revoke all previous wills at any time heretofore made by me.

"I will, devise and bequeath to John Vonderharr and Frank Vonderharr, share and share alike, Section No. Ten, in Township No. Ninety-four, north of Range Forty-three, west of the 5th Principal Meridian, in East Orange Township, Sioux County, Iowa, subject to the condition that they pay the sum of ten thousand dollars to Clem Vonderharr, that they pay the sum of ten thousand dollars to Ben Vonderharr, that they pay the sum of one thousand dollars to Mary Plagge, formerly Mary Vonderharr, that they pay the sum of three thousand six hundred and twenty-five dollars to each of my following named children: Anna Siemonsma, formerly Anna Vonderharr, Francis Schnieder, formerly Francis Vonderharr, Rosa Siemonsma, formerly Rosa Vonderharr, Henry Vonderharr, Clara Vonderharr, Antonie Vonderharr. And further that they pay the sum of three thousand six hundred and twenty-five dollars to the children of Lizzie Hullsing, formerly Lizzie Vonderharr, and the sum of three thousand six hundred twenty-five dollars to the children of Josephine Vaske, formerly Josephine Vonderharr, and by the use of the word children in these last two respective payments, is meant such children as shall survive me after my death and said payments to go to them share and share alike; I further hereby make these payments a charge and lien on the land until the same are paid, said payments to be paid within five years after my

death and to bear interest at the rate of five per cent, after my death.

"The rest, residue and remainder of my said property, I will, devise and bequeath as follows:

"That out of my said residue and remainder should first be paid the expenses of my last sickness and funeral, and any other debts that I may owe. I then bequeath to John Vonderharr the sum of five thousand dollars. I further bequeath to Frank Vonderharr the sum of five thousand dollars; all the rest, residue and remainder to be equally divided between Anna Siemonsma, Francis Schneider, Rosa Siemonsma, Henry Vonderharr, Clara Vonderharr, Anton Vonderharr, Mary Plagge, Ben Vonderharr, and Clem Vonderharr, and the children of Lizzie Hullsing, said children inheriting the respective share of their mother, and the children of Josephine Vaske, said children inheriting the respective share of their mother.

"I hereby nominate and appoint my son, John Vonderharr, executor of my last will and testament, and ask that he be allowed to serve without giving bond.

"In witness whereof, I have to this, my last will and testament, written upon two sheets of paper, subscribed my name this 19th day of January, 1915."

This will was presented and filed for probate in the district court of Plymouth County, Iowa, on the 17th day of June, 1915, and the following notice of probate was issued by the clerk of said court, and duly published as required by law:

"Estate of John Henry Vonderharr, Deceased.

"State of Iowa, Plymouth County, SS.

"To John Vonderharr, Frank Vonderharr, Clem Vonderharr, Anna Siemonsma, Frances Schniders, Rosa Siemonsma, Henry Vonderharr, Clara Vonderharr, Anton Vonderharr, Ben Vonderharr, Mary Plagge, children of Lizzie Hulsing and children of Josephine Vaske, known heirs at law of John Henry Vonderharr, late of said county, deceased, and all others concerned:

"You are hereby notified that, on the 17th day of June,

1915, there was filed in the office of the clerk of the district court of the state of Iowa, in and for Plymouth County, and opened and read by said clerk, an instrument in writing purporting to be the last will of John Henry Vonderharr, deceased, late of said county.

"And you are further notified that the 29th day of September, 1915, had been fixed for the final proof and hearing of said will, at which time all persons interested may appear and show cause why the same should not be admitted to probate."

Prior to the date fixed for probate, the following objections were filed to the probate of the will:

"Come now Clem J. Vonderharr, Bernard H. Vonderharr, Henry Vonderharr, Anton Vonderharr, Clara Vonderharr, Anna Siemonsma, Frances Schnieders, Rosa Siemonsma, Mary Plagge and Mary Mathias and Henry Hulsing, children of Elizabeth Hulsing, formerly Elizabeth Vonderharr, now deceased, and the children of Josephine Vaske, formerly Josephine Vonderharr, now deceased, all of the foregoing being the children and grandchildren respectively of said deceased.

"That there is filed in the court and probate is asked of a pretended last will and testament of the said John Henry Vonderharr, deceased.

"That said pretended last will and testament is not the last will and testament of said John Henry Vonderharr, deceased, and should not be admitted to probate for the following reasons, to wit:

"1.   That the testator was of unsound mind when it was executed.

"2.   That it was procured by undue influence and fraud.

"Wherefore, contestants ask that the said will be not admitted to probate, and that the same be held for naught; also judgment against proponents for costs."

After said will was filed for probate, and before the day fixed for its probate, John Vonderharr, son of Henry, and named in the will hereinbefore set out, died, leaving a will in which his wife, Anna, was made sole beneficiary.

On or about the 7th day of October, 1915, Anna Vonderharr appeared in said cause, and filed the following application for leave to defend against the claims of the objectors to the probate of the will of Henry:

"Comes now Anna Vonderharr, and respectfully states to the court:

"That her husband, John Vonderharr, died a resident of Sioux County, Iowa, on the 18th day of June, 1915, and that his last will and testament has been duly admitted to probate in Sioux County, Iowa, as Number 1888 probate; that, on the 22d day of September, 1915, your petitioner was duly appointed sole executrix of the estate of her late husband, the said John Vonderharr, and has duly qualified as such, and is now acting as such executrix.

"That John Henry Vonderharr, the father of this petitioner's husband, died a resident of Plymouth County, Iowa, on the 13th day of June, 1915, and that he left a last will and testament which was duly filed with the clerk of the district court in and for Plymouth County, Iowa, on the 17th day of June, 1915; that the clerk of said court thereupon issued the usual citation, fixing the probate of said will for the 29th day of September, 1915, and publisher's proof showing due publication of said citation and notice has been duly filed in this cause; that, on the 17th day of June, 1915, Frank J. Vonderharr, a son of the said John Henry Vonderharr, and one of the legatees named in the will of said decedent, filed in this cause a petition, asking that the will of the said John Henry Vonderharr be duly admitted to probate. That, in said will of the decedent, John Vonderharr, the deceased husband of this petitioner, is named as sole executor; that, by reason of the death of her said husband, John Vonderharr, and her appointment as executrix of his estate, the duty devolves on this petitioner to take such steps as may be necessary to procure the probate of the will of the said John Henry Vonderharr.

"That, on the 20th day of September, 1915, there was filed in this cause a contest and exceptions to the probate of the will of John Henry Vonderharr, in which said contest

all the legal heirs of said decedent appear to join, save and except Frank J. Vonderharr and this petitioner's husband, John Vonderharr, deceased; that John Henry Vonderharr, deceased, left an estate of the value of approximately $100,000, consisting in the main of a section of land located near Granville, in Sioux County, Iowa, and money, notes, and mortgages, now in the possession of one W. G. Sievers, special administrator, of Remsen, Iowa; that the contest aforesaid is based upon the grounds of the testator's mental incapacity, and alleged undue influence exerted upon him in the matter of making and publishing of said will.

"That, in order to make a proper defense to the attack that has been made upon said will, it will be necessary for your petitioner to employ counsel, so that all reasonable preparation may be made to carry out and enforce the last will and testament of the decedent, and that preparations may be made for obtaining evidence and investigating the same in relation to the charges that are brought and preferred by the contestants; that your petitioner desires to employ Messrs. McDuffie & Keenan, of Le Mars, Iowa, and Messrs. Van Oosterhout & Kolyn, of Orange City, Iowa, as attorneys for the proponents and executor in the matter of the probate of the will of the said John Vonderharr.

"Wherefore, your petitioner prays the court that an order be entered herein, authorizing her to employ counsel as aforesaid, and to incur such expenses as may be reasonable and necessary in the matter of the summoning and subpoenaing of witnesses in the matter of the investigation of their testimony, and for such other and further orders as may be requisite in the premises."

Upon said application, the following order was made:

"Now, to wit, on this 8th day of October, 1915, the application of Anna Vonderharr, executrix of the estate of John Vonderharr, comes on for hearing before the court, and the court having examined said application and being now fully advised in the premises:

"It is hereby ordered that the prayer of said petitioner be granted, and she be authorized and directed and per-

mitted to employ Messrs. McDuffie & Keenan, and Messrs. Van Oosterhout & Kolyn, as attorneys to represent the estate of John Henry Vonderharr, deceased, in the matter of resisting the contest and objections filed to the probate of said will, and that said petitioner be authorized to incur such expenses as may be reasonably necessary to investigate the evidence and secure the attendance of the necessary witnesses in the matter of the probate of the aforesaid will."

Anton Vonderharr, one of the sons of Henry, was then a minor, about 17 years of age, and had no regularly appointed guardian. Before the trial of the cause, J. F. Kass and J. U. Sammis, attorneys for the contestants, were appointed guardians ad litem for him, and also for Bernard, Mary, Aloysius, Edward, Lawrence, and Cecelia Vaske, who were minors, and children of Josephine Vaske, deceased daughter of Henry, and filed answer for them as such. The record discloses no notice upon any of these minors, except the general notice that the will had been filed and would be called for probate, as hereinbefore set out.

The record discloses that Kass Bros. and Sammis appeared for contestants, and McDuffie & Keenan and Van Oosterhout & Kolyn for proponents. The cause came on for hearing on the 29th day of November, 1915, Hon. W. D. Boies presiding. A jury was called, and the following proceedings had: Opening statements made by respective counsel. The following evidence introduced:

"Mr. Sammis: It is admitted and conceded by contestants that the will sought to be probated was executed according to the formalities of law, and was signed by the testator, John Henry Vonderharr, and the same purports to be his last will and testament, and was witnessed by the subscribing witnesses whose names appear thereon.

"It is further admitted that the instrument (being the will in question, a copy of which is hereinbefore set out) was signed and executed by said John Henry Vonderharr, on the 16th day of January, 1915, and that the same purports to be the last will and testament of said John Henry Vonderharr, and was duly witnessed by the subscribing wit-

nesses whose names appear thereon."

Thereupon, the contestants offered said will in evidence, and the court took a recess. On the reconvening of court, the court was advised by counsel for contestants that the case might be settled. A further recess was taken. It appears that the settlement was proposed by Mr. Kass, representing the contestants. Mr. Sammis and Mr. McDuffie were called into consultation. The testimony of Mr. Van Oosterhout on this point is:

"We entered into negotiations, and propositions of settlement were made by Mr. Sammis and Mr. Kass, representing the contestants, as to what their people were willing to do, and I talked with Mr. McDuffie, who was associated with me for proponents, and also with Mr. Frank Vonderharr and Mr. Bert Christianson, as representing Mrs. Vonderharr. Negotiations were had, back and forth, lasting a considerable time. When the matter got down to a point where Mr. McDuffie and I figured we could afford to accept it, we went out—Mr. Keenan, Mr. McDuffie, Mr. Frank Vonderharr, Bert Christianson and myself. We went into the back room, and went all over it, and they seemed to be of the same opinion, that it would be all right if we could get a settlement on the basis suggested. We went over it with Christianson and Frank: that is, the proposed terms of the settlement."

After this consultation, it was proposed that Christianson, who was Mrs. John Vonderharr's hired man, should go out and get in communication with Mrs. Anna Vonderharr. He was instructed to tell her what the proposed settlement was, and to tell her that Frank (her husband's brother) was satisfied to have the thing settled on that basis; that Mr. McDuffie and Mr. Van Oosterhout felt that the settlement was a good one, and to tell her that there were a number of nice questions in the settlement; that, by including attorneys' fees, she would have coming $50,000, and the other heirs, $175,000; that it was the opinion of her attorneys that, by all means, she ought to accept the offer, but to talk to her, and come back and tell what she said; that, unless

it was satisfactory to her, of course, the trial would go on. Bert Christianson, the hired man, was gone about 15 or 20 minutes. Mr. Van Oosterhout further testified:

"When he returned, he wanted to know if I didn't want to talk with her myself, and I said 'No. You are more familiar with her than I am, and you can tell her this plan. You understand it fully. Go and tell her what the proposition is and everything, and bring back word, and let me know what she says.' So Christianson went down. He returned, and said that he had talked with her, and that Mrs. Vonderharr said that, if Frank was satisfied, she was, and go ahead and get the papers drawn up and sign the matter up. Of course, that is the report that Bert Christianson brought back to me. After the report was made, we told Judge Boies that the parties had agreed upon a settlement, and asked for time to draw up a stipulation. Then the following stipulation was made out, signed by the attorneys, and submitted to the court:

" 'It is hereby stipulated and agreed by and between all of the parties hereto, and their legal representatives, including the guardians ad litem of the minor heirs of said deceased, and including John Vaske, the legal and duly appointed guardian of said minors, except the minor, Anton Vonderharr, as follows, to wit:

" '1. That all controversies between each and all of the parties hereto are hereby settled, adjusted and determined, as hereinafter set forth.

" '2. That J. T. Keenan, of LeMars, Iowa, and W. G. Sievers of Remsen, Iowa, shall be duly appointed administrators of said estate, with full authority to take possession of all property of every kind and nature, wheresoever found or located, belonging to said estate, and to convert the same into money.

" '3. Unless the contestants shall pay or cause to be paid the several sums hereinafter provided, within 18 months from this date, all the real estate belonging to said estate shall be sold by the administrators, and the proceeds distributed as hereinafter provided.

" '4.   That said administrators shall first pay out of any
moneys coming into their hands all claims against said es-
tate, as by law provided, and in addition thereto, they shall
pay the costs incurred in the contest of the will of said
deceased, including an attorney's fee of $2,500 to McDuffie
& Keenan, of LeMars, Iowa, and Van Oosterhout & Kolyn,
of Orange City, Iowa, attorneys for proponents, the estate
of John Vonderharr and Frank Vonderharr, and the estate
of John Henry Vonderharr, deceased, and the further sum
of $2,500 to Kass Bros. & Sievers, of Remsen, Iowa, and
Sammis & Bradley, of LeMars, Iowa, attorneys for all of
the contestants, including all the minor heirs of said de-
ceased.

" '5.   That said administrators shall pay from moneys
coming into their hands the sum of $25,000 to the estate of
John Vonderharr, deceased, and the sum of $22,500 to the
proponent, Frank Vonderharr, in full settlement of all
claims of the said estate of John Vonderharr and of Frank
Vonderharr against the estate of John Henry Vonderharr,
deceased, and that said payments shall be made on or be-
fore two years from this date, or as soon as final distribu-
tion of said estate can be effected, and any portions of said
sums that may remain unpaid on and after December 1,
1916, shall draw interest at the rate of 5 per cent per
annum.

" '6.   That, upon the payment of said sums to the said
estate of John Vonderharr, deceased, and to Frank Vonder-
harr, the said parties, or their legal representatives, hereby
agree to execute and deliver any deeds or conveyances or
releases or transfers that may be necessary to perfect the
title to the real property belonging to the estate of John
Henry Vonderharr.

" '7.   That any and all moneys or other property remain-
ing in the hands of said administrators, after the settle-
ment and payment of the claims and costs and attorneys'
fees hereinabove enumerated, and after the payment of
said sums of money to the estate of John Vonderharr, de-
ceased, and to Frank Vonderharr, as hereinbefore set forth,

shall be surrendered and turned over to Kass Bros. & Sievers, of Remsen, Iowa, the attorneys for said contestants, for the use and benefit of said contestants, and proper receipts taken therefor.

" '8. That said administrators shall pay any and all additional costs of administration incurred in the final settlement and distribution of said estate, except that they shall not pay to the said J. T. Keenan, as administrator of said estate, any fees on account of services he may render therein, but any such fees that may be due and owing to him shall be paid by the said Frank Vonderharr and the estate of John Vonderharr, deceased.

" '9. It is hereby further stipulated and agreed that the probate of the wills, Exhibits A and B, or either of them, offered for probate as the last will and testament of said deceased, shall be and is hereby denied.

" '10. It is further agreed that this stipulation shall be submitted to the court for its approval, and, upon being approved by the court, it is stipulated and agreed that a final decree may be entered in accordance with this stipulation and agreement.' "

Upon the filing of stipulation with the court, the following decree was entered:

"And now on this day, to wit, November 29, 1915, it being one of the days of the November term, A. D. 1915, of said court, the above-entitled matter coming on for hearing of proofs in relation to the instrument purporting to be the last will and testament of said deceased, John Henry Vonderharr, filed herein for probate on the 17th day of June, 1915, and the objections and exceptions to the probate thereof, the proponents, Frank Vonderharr and Anna Vonderharr, the widow and sole beneficiary of John Vonderharr, son of the above-named deceased, appearing in person and by their attorneys, Van Oosterhout & Kolyn, of Orange City, Iowa, and McDuffie & Keenan, of Le Mars, Iowa, and the contestants, Clem J. Vonderharr, Bernard H. Vonderharr, Henry Vonderharr, Anna Siemonsma, Frances Schnieders, Rosa Siemonsma, Clara Nothem, formerly Clara Vonder-

harr, Mary Plagge, Mary Mathias and Henry Hulsing, appearing in person and by their attorneys, Kass Bros. & Sievers, of Remsen, Iowa, and Sammis & Bradley, of Le-Mars, Iowa, and it appearing that Anton Vonderharr, son of said deceased, and Bernard Vaske, Mary Vaske, Aloysius Vaske, Edward Vaske, Lawrence Vaske, and Cecelia Vaske, minor children of Josephine Vaske, the deceased daughter of said above-named deceased, are minors, and that due and legal notice of the hearing of the probate of said instrument has been given, as by law provided; it is therefore ordered that J. U. Sammis and J. F. Kass, attorneys, are hereby appointed guardians ad litem herein for said minors and each of them. And said parties appearing and said guardians ad litem appearing, and filed answer, it is therefore ordered that this cause proceed to final determination on the issues joined herein.

"And now on this day, to wit, November 30, 1915, the said parties and their attorneys appearing, thereupon the parties having entered into a stipulation and agreement in writing, filed herein, providing for the settlement of this controversy, which stipulation is thereupon in open court submitted to said court for approval, and the court having examined said stipulation and the records and files herein, and being fully advised in the premises, finds that it had jurisdiction of all the parties and subject-matter of this proceeding, it is thereupon ordered, adjudged, and decreed by the court: That the probate of the wills, Exhibits A and B, or either of them, offered for probate as the last will and testament of said deceased, shall be and is hereby denied. And that this proceeding be and hereby is settled, adjusted and determined, as provided by the said stipulation of the parties in writing filed herein, and which stipulation is hereby approved and ordered filed herein and made a part of this decree.

"And it is further ordered, adjudged, and decreed by the court, upon the stipulation of the parties filed herein, that J. T. Keenan, of Le Mars, Iowa, and W. G. Sievers, of Remsen, Iowa, be and they are hereby appointed administrators

of the estate of John Henry Vonderharr, deceased, with the power and authority, as by law and said stipulation provided, and that, upon the filing in the office of the clerk of said court a bond in the penal sum of $20,000, with surety to be approved, letters of administration shall issue to them accordingly."

The record stood as hereinbefore set out until the 6th day of September, 1916, at which time Clara Nothem, the plaintiff herein, being one of the children of John Henry Vonderharr, filed her petition, making all the parties hereinbefore named defendants, and alleging that, under and by virtue of the decree above set out, the parties to the proceedings are entitled to receive from the estate of John Henry Vonderharr the sums recited in said decree, and alleging that, under and by virtue of said decree, the only means with which to pay the said claims is out of the proceeds to be derived from the sale of property left by the said John Henry Vonderharr, and that it will be for the best interests of all parties concerned that such premises be sold, and the proceeds applied toward the payment of the same; that, under and by virtue of the decree, all moneys or property remaining in the hands of the administrators of said estate, after the settlement and payment of claims, costs, and attorneys' fees, and after the payment of the sums of money due said Frank and Anna Vonderharr, be turned over to Kass Bros. & Sievers, for the use and benefit of the plaintiff, and the other defendants, as provided in the decree, alleging that the property cannot be equitably divided, and praying judgment, confirming the share of the parties, as provided in the stipulation of settlement.

Anna Vonderharr, wife of said John Vonderharr, appeared, and filed answer and cross-petition, in which she alleged substantially the matters hereinbefore set out, but averred that the order and decree is and ought to be held void, for that said order and decree was rendered and entered in a proceeding under Sections 3283 and 3284 of the Code of Iowa for the probate of wills; that the only issue tendered or joined in said proceeding was as to whether

John Henry Vonderharr was mentally competent to make a will, and whether or not the will made was the result of undue influence; that no trial was had in said proceedings upon said issue, and no evidence offered or received; that the order and decree relied upon by plaintiffs in this suit was entered in pursuance of a stipulation between the plaintiff, Clara Nothem, and some of the defendants; that said stipulation was the result of an unlawful, fraudulent, and collusive agreement between the plaintiff, Clara Nothem, and the defendants, Clem J. and Bernard H: Vonderharr and the other adult heirs at law of said John Henry Vonderharr, and was entered into and made to their advantage, and for the purpose of securing to them a larger share of the estate than they would receive under the will or in case of intestacy; that, at the time the stipulation was made, they well knew that John Vonderharr, this cross-petitioner's husband, had died, leaving this defendant and cross-petitioner, his widow, pregnant with child, and that said child was about to be born; that they withheld said knowledge from the court before whom such proceedings were pending; that this cross-petitioner was not present at the time of the making of the stipulation or of the rendering or entering of the decree and order, being, at the time, about to give birth to Elizabeth Vonderharr, who is joint cross-petitioner with her, and who was born on the day the stipulation was made; that the court in said proceedings had no jurisdiction of the defendants Anton Vonderharr, Lawrence Vaske, and Cecelia Vaske, for the reason that they were minors, and that the only notice to them of the proceeding was the statutory notice hereinbefore set out; and that Lawrence and Cecelia Vaske were wholly without authority to act for said minors in the making of said stipulation, and in agreeing to stipulation thereof; that said Anton Vonderharr was without guardian, and was only represented by a guardian ad litem, appointed on the 30th day of November, 1915; and that, there being no service other than the notice hereinbefore set out, upon the said Anton, the guardian ad litem appointed by the court was entirely without authority to act for said

minor in the matter of said stipulation; that this defendant
and cross-petitioner never signed or agreed to said stipula-
tion, or authorized any person to sign said stipulation for
her, and was entirely ignorant of the terms and provisions
of the same, when the same was signed, and when the judg-
ment and decree was entered; that, at the time the stipula-
tion was signed, she was confined to her home in bed, and
about to give birth to the defendant her cocross-petitioner,
Elizabeth Vonderharr, and was incapable of comprehending
or exercising judgment upon the subject-matter of the set-
tlement; that the stipulation was signed only by the attor-
neys appearing as counsel in the will contest; that, in sign-
ing said stipulation, the attorneys acted beyond their legal
authority. She denies that the plaintiff or any of the de-
fendants have any interest in the real estate sought to be
partitioned, other than as provided in the will and testa-
ment of John Henry Vonderharr, and states that, after the
entry of said order and decree, she was advised by her at-
torney that she could not interfere with said order and
stipulation; that she only recently, and within the last 30
days, learned fully of her rights in the premises; that she
had been dissatisfied, and opposed to the said stipulation
and to the entry of said decree; that she desired and now
desires the probate of said will, and a trial of the issues
touching the validity of said will. Her prayer is that the
plaintiff's petition be dismissed; that the order and decree
entered upon the stipulation be adjudged and set aside; that
the stipulation be adjudged void; and that it be ordered and
decreed that the last will and testament of John Henry Von-
derharr be offered for probate, and a trial of any issue touch-
ing the legality of said will be had, and for such other equi-
table relief as may be granted by the court within the
premises.

A trial was had upon this cross-petition, and the court
dismissed the cross-petition, and granted the prayer of
plaintiff's petition.

Anna Vonderharr, in her own right, and as guardian of

Elizabeth, her posthumous child, appeals, and asks here for the relief denied them in the court below.

The case is triable *de novo*. The case is submitted here upon the foregoing record, with the following added testimony: It was stipulated that the only notice served upon any of the heirs in the matter of said will contest was the general notice issued by the clerk, hereinbefore set out.

It will be noted in the foregoing statement of the record that Mr. Van Oosterhout testified that, before the agreement was signed, he directed one Bert Christianson, who was, at that time, Mrs. Anna Vonderharr's hired man, and who was present at the trial, to communicate with her touching the alleged settlement, to tell her the terms of the settlement, and to see whether or not she would consent thereto, and said that, unless it was satisfactory to her, they would go on with the trial; that Christianson reported that he had talked with her over the phone, and that she said that, if Frank was satisfied, she was, and to go ahead and get the papers drawn, and sign the matter up.

Christianson testifies, and it is not disputed:

"They asked me to tell Mrs. Vonderharr about the settlement, and I did tell her, as nearly as I remember, that they had settled the case; that the will case had been settled. I talked with her over the phone. I was authorized to call her up. I told her they had settled the case, but I didn't seem to make her understand. I said to her, as nearly as I remember, that she was to get $25,000, and she kept asking, 'What?' and I said it over. She didn't seem to understand. I don't know which it was—that she didn't understand, or she couldn't hear it; and that was all that was said. All I told her was that she was to get $25,000, and that the case was settled. I didn't know what was in the stipulation of settlement. I had not read it. I had not seen it. I was subpoenaed there as a witness. I didn't represent Mrs. Vonderharr in any capacity. I had no authority, and I had received no directions from Mrs. Vonderharr to act for her at all. I was in the room during the conversation relative to the terms of settlement. Mr. Van Oosterhout told me that

she was to get $25,000, and for me to go and tell her. I
didn't ask her if she would be satisfied with that. Before I
telephoned, I didn't know the terms of the settlement. I
told Mr. Keenan it was not my place to telephone, but Mr.
Van Oosterhout told me that he thought she would under-
stand me better than him."

Mrs. Anna Vonderharr testified:

"I employed Van Oosterhout & Kolyn and McDuffie &
Keenan as my attorneys. This was at my farm. We talked
about only they were going to fight this case for me—the
will contest. Nothing was said about their settling the
case for me. I never authorized them to make a settlement
of the will contest. I first heard of it,—it was phoned to
me. I was in bed, about to give birth to a child. I was
helped to the phone. I talked with Mr. Christianson. He
was our hired man. He was at LeMars. Mr. Christianson
said, 'They have made a settlement;' and I said 'Is that so?'
I was then taken back to bed. No one advised me, at the
time, of the terms of the settlement. Nothing was said as
to how the estate was to be divided. Nothing was said
about setting aside the will. Up to that time, I had not
talked with anyone with reference to the settlement of the
case. The first I learned of what was in the stipulation was
the following March. I then spoke to Mr. Van Oosterhout,
and he said it was a thing of the past; that he did not want
to speak of it. I asked him how Elizabeth [the posthumous
child] was coming out. He said she had no claim what-
ever. Mr. Christianson was in LeMars, but not to repre-
sent me. He was working for me simply as a hired man.
He was there as a witness, a witness to the will. The day
I hired Mr. Van Oosterhout to fight the case, he was at my
place about an hour. I didn't see him between the day I
hired him and the time the case was called for trial in
LeMars. I didn't see any of my attorneys during that time.
When I talked with Mr. Christianson over the phone, I could
not understand him, and he seemed not to be able to under-
stand me. I don't know whether it was the phone's fault or
my sickness. I was not able to stand up there. I didn't

speak with Christianson again for about two weeks after the child was born. When I spoke to him, I didn't ask him about the settlement. I was too weak. The doctor strictly forbade me to put anything on my mind. I was not in a condition to talk business before March. I had seven children before Elizabeth was born. I had a hard time after the birth of each, but I never was so sick as the last time. I never received any money, but I was living on this farm, and they charged me rent for it, and had me sign a receipt for $1,500, which they applied on what they claimed to be rent owing by me for the use of the farm. When I received the receipt, I sent Mr. Christianson to Orange City, to see what the paper meant, and Mr. Christianson reported that Mr. Van Oosterhout said it was all right; that I should put my name to it."

The only other testimony upon which is predicated a claim that Anna Vonderharr consented to the settlement is testimony to the effect that Mr. Van Oosterhout told her, at the time he visited her and was employed to defend the will against the contestants, that a situation might easily develop where it would be to her interest to compromise the matter, rather than to risk everything in a trial to a jury; and she replied that she looked to Mr. Van Oosterhout and Mr. McDuffie to do the best they could for her.

It may be said further that Mr. Van Oosterhout testified that, soon after the settlement, he sent a copy of the settlement and decree to Mrs. Vonderharr, at Granville, Iowa; that he didn't hear directly in response to that, but that she made no complaint in respect to the settlement. He testified, however, that he had never discussed with Mrs. Vonderharr any particular terms of settlement, before the stipulation was entered into, except as indicated above. He said:

"I never discussed with her any possible terms of settlement, or any terms of settlement agreed upon."

Mr. McDuffie and Mr. Keenan both testified that they knew of no authority to make the settlement, other than was found in their general employment to defend against

the will contest; that they had never talked with or communicated with Mrs. Anna Vonderharr touching any settlement, or any disposition of the case such as was made in the settlement relied on.   It seems that Mr. McDuffie and Mr. Keenan assumed that the authority was invested in Mr. Van Oosterhout to make the settlement, and it would seem that Mr. Van Oosterhout, in making the settlement, or consenting to the settlement, assumed, from what Christianson said, that Mrs. Anna Vonderharr had been informed of the terms of the settlement, and had consented thereto before the settlement was made.   The statement made by Mr. Van Oosterhout is significant, touching the directions which he gave to Christianson, to wit:

"Go somewhere and get in communication with Mrs. Vonderharr.   Tell her just what this settlement is, as proposed, and tell her that Frank is satisfied to have the thing settled on the basis, and Mr. McDuffie and I feel it is a good settlement.   Tell her we think she ought to accept the offer, talk to her, and come back and let us know what she says.   Unless it is satisfactory to her, of course we will go on with the trial of the case."

There is no question in this record but that these attorneys representing proponent acted in good faith.   They believed that Christianson had communicated with her, and that she had consented to the settlement; but the record, without dispute, shows that Christianson did not communicate with her as directed by Mr. Van Oosterhout and Mr. Keenan; that he did not communicate to her the facts which he was told to communicate to her; and his report "that she was satisfied if Frank was satisfied," was unwarranted by anything that Mrs. Vonderharr said.

So we have in this record no evidence of intentional fraud committed by the attorneys to the prejudice of their clients.   But we have evidence that they were mistaken as to the existence of a fact essential to their right to make the settlement, to wit, the consent of their client to the making of the settlement.   If they assumed the right to make the settlement simply upon the ground of their general employ-

ment by Mrs. Vonderharr to represent her in the will contest, the assumption was not well founded. If they made the settlement on the supposition that she had been communicated with, and had consented to the settlement, that assumption was not well founded, as disclosed by this record. It will be noted that these attorneys were employed by Mrs. Vonderharr to defend against an effort on the part of the contestants to set aside the will. She was interested in having the will probated, and they were employed to secure its probate. Nothing in the conversation which these attorneys had with Mrs. Vonderharr indicates that she understood or intended or thought, or by any word conveyed to them the thought, that they were employed other than as her attorneys to defend against the contest. Indeed, when we turn to the application which these attorneys themselves filed, requesting permission on the part of Mrs. Vonderharr, as administrator of her husband's estate, to appear and defend against the contest, and to employ attorneys for that purpose, we find them saying that, in order to make a proper defense to the attack that is made upon the will, it is necessary for her to employ counsel, so that all reasonable preparation may be made to carry out and enforce the last will and testament of the decedent, and praying that the court authorize and allow her to employ Messrs. McDuffie & Keenan and Messrs. Van Oosterhout & Kolyn, as attorneys to make such defense. We find the court, upon this application, ordering and permitting her to employ these attorneys, to represent the estate of John Henry Vonderharr, deceased, "in the matter of resisting the contest and objections filed to the probate of the will," and to incur such expense as was reasonably necessary to investigate the evidence and secure the attendance of necessary witnesses in the matter of the probate of the will. There is nothing in this record to show that Mrs. Vonderharr employed these attorneys for any purpose, or gave them authority to represent her in any way, except in defending the will against the attacks made upon it.

It is to this proposition that we first address ourselves,

and it involves this question: Were the attorneys who made and signed this stipulation authorized and empowered to make the settlement herein relied upon,

1. ATTORNEY AND CLIENT: general authority: settlements.

without the knowledge and consent of their client, Mrs. Vonderharr? If they had no such authority, then it follows logically that what they did in making the settlement and in signing the stipulation was not binding on her, at the time it was done.

Courts have disagreed greatly as to the extent of the powers of attorneys to bind their clients, under general employment. This court, however, has taken a positive stand upon that question, and has said:

"It is undoubtedly true that an attorney cannot consent to a judgment against his client, or waive any cause of action or defense in the case; neither can he settle or compromise it without special authority. But he is, by his general employment, authorized to do all acts necessary or incidental to the prosecution or defense which pertain to the remedy pursued. The choice of proceedings, the manner of trial, and the like, are all within the sphere of his general authority; and, as to these matters, his client is bound by his action. * * * It cannot be doubted that, under these rules, counsel for parties in several suits involving the same issues may, in the exercise of their general authority, consent to the consolidation of all for trial, or stipulate that the trial of one shall determine the others. This pertains to the remedy pursued,—to the manner of trial,—and is not an agreement for judgment or a compromise. The parties are not deprived of a trial, nor is judgment rendered by consent. The counsel simply assent to a trial in a particular manner; that one trial shall settle the same issues in several cases." *Ohlquest v. Farwell & Co.*, 71 Iowa 231.

This court has also said that an attorney under general employment to prosecute an action has no authority to dismiss it. Referring to the case last above cited, the court said:

"The foregoing language seems to have support on authority, and its effect is to deny the rights of an attorney,

under a general employment to prosecute a suit, to dismiss it. His employment is to prosecute, and, in an important sense, it is inconsistent with a power to dismiss the suit. It is reasonable to say that such power should be specially delegated. The quoted language above indicates strongly that an attorney so employed shall not do what will deprive his client of a trial. His implied powers are such as are necessary or incidental to the prosecution or defense which he is employed to conduct." *Rhutasel v. Rule,* 97 Iowa 20.

The rule announced in the foregoing cases was emphasized again in *Kilmer v. Gallaher,* 112 Iowa 583, and it is said:

"It is an undisputed fact that the attorney for defendant agreed to a settlement of the case and a judgment against his client, without his knowledge or consent, and he was an attorney under a general employment."

In *Rhutasel v. Rule,* 97 Iowa 20 (supra), we cited and quoted from *Ohlquest v. Farwell & Co.,* 71 Iowa 231, and held that an attorney under a general employment had no authority to consent to judgment against his client, or waive any cause of action or defense in his case. We approved the same rule in *Martin v. Capital Ins. Co.,* 85 Iowa 643. The case of *Bigler v. Toy,* 68 Iowa 687, holds the same rule. In that case, a compromise was made by an attorney for plaintiff, and this court said:

"We are of the opinion that the compromise in no respect binds the plaintiff, because Irwin had no power or authority to make it."

These authorities were approved in *Kwentsky v. Sirovy,* 142 Iowa 385, Division 5, page 395. They were again approved and applied in *Lingenfelter Bros. v. Bowman,* 156 Iowa 649, Subdivision 3, page 654.

So we say that, under the general employment of counsel in this case, they had no authority to bind Mrs. Anna Vonderharr by the stipulation in this suit, and, the stipulation being unauthorized and in no way binding upon her, the judgment or decree entered upon that stipulation is equally without force and effect as to her.

We might say here that Judge Boies, by whom the stipulation was approved, and who was the presiding judge at the time the judgment was entered, testified:

"There was no trial of the issues joined in that cause as to the mental soundness of the decedent, or as to the question of undue influence having been exercised upon him at all. Counsel came to me and announced that they had agreed upon a settlement, and presented the decree and stipulation to me, and I signed them at their request."

It does not appear that knowledge was conveyed to the court that counsel was acting only under the general authority to secure the probate of the will. It was not brought to the knowledge of the court that Mrs. Vonderharr was not informed of the settlement or the terms of the settlement, or that a settlement had been made or was contemplated, or that the application for probate should be dismissed. We have no criticism of counsel at this point; for we take it that counsel, at that time, assumed that she had consented, by reason of what Christianson had said. But Christianson did not represent Mrs. Vonderharr. It was at counsel's request that he communicated with her, and, if he brought a false answer to them, it does not change the fact that the settlement was made without her knowledge and without her consent, and was, therefore, not binding upon her.

It follows that a judgment based upon a decree which, for its validity, rests on the consent of the parties to the decree, is not binding, when it appears that consent was never given. So we say that there was no authority in these attorneys to make this stipulation of settlement as to Anna Vonderharr and her posthumous child, and the stipulation is void for want of such consent, and the decree entered upon this stipulation is a constructive fraud upon the court, and vitiates the judgment, and is equally void.

This brings us to a consideration of the right of counsel to stipulate the minors out of court.

It will be noted that Anton, one of the sons, was a minor, and no guardian was appointed for him. No service was

made upon him, other than the general notice that the will
would be called for probate. On the day of
the trial, the attorneys for contestants were
appointed his guardians ad litem. Our
statute provides that no judgment can be
entered against a minor until after defense
has been made by his regular guardian, or one appointed by
the court for that purpose. The appointment by the court
is for the purpose of defending the minor, and the authority
of the guardian so appointed is limited to that. And fur-
ther than that, no guardian ad litem can be appointed to
defend a minor, except for those purposes over which the
court, by the notice, has acquired jurisdiction of the minor;
and in this case, the jurisdiction acquired was only as to
the probate of the will, and not as to settlement, compro-
mise, or distribution of the estate among the heirs of John
Henry Vonderharr.

2. Infants:
guardian ad
litem:
authority:
stipulation
of settle-
ment.

Some argument is made as to the other minors, to the
effect that they were represented in class; but it is not mate-
rial to this controversy that we pass upon these questions.
These minors are not here asking any affirmative relief, or
any relief against the actions complained of by Mrs. Anna
Vonderharr. We are inclined, however, to think that they
were not bound by the action of counsel.

It is next contended that Mrs. Vonderharr is now es-
topped from claiming that the stipulation
and judgment were not binding upon her;
that she did not speak in time; that she was
guilty of laches; that she ratified the judgment by accepting
some of its benefits.

3. Judgment:
vacation:
ratification
as bar.

We have examined the records in vain to find any af-
firmative act on her part, done in recognition of the binding
force of this judgment upon her, or that she knowingly re-
ceived any benefits from the judgment. It appears that she
was occupying a portion of the land of which John Henry
Vonderharr died seized, and was owing rental therefor;
that someone representing interests adverse to hers under-
took to relieve her of the payment of this rental, by assum-

ing to credit her on the amount allowed her in the stipula-
tion. To accomplish that purpose, they sent her a receipt
to be signed, for $1,500. When she received this receipt, she
had no information as to what the receipt was for, nor does
it appear that any was communicated to her. She consulted
her attorney, and was directed to sign the receipt, and she
did so without knowledge. Now, it is elementary that one
cannot be said to have ratified an act done by another, with-
out authority, until it is first shown that the party who is
sought to be charged with the ratification had full knowl-
edge of all the facts and circumstances concerning the act
which it is claimed was ratified. Or, in other words, the
ratification, to be binding, must be made with full knowl-
edge of all the facts and circumstances essential to be
known, and with a proper understanding of the effect the
act sought to be ratified has upon his rights.

Other questions are discussed, which we do not deem it
necessary now to dispose of.

The stipulation and decree as to Mrs. Anna Vonderharr
and her posthumous child are absolutely void, for want of
authority in her attorneys to make the stipulation upon
which the decree was entered. The court, therefore, erred
in granting the plaintiff the relief prayed for, and its action
is reversed. The court further erred in denying the cross-
petitioner, Anna Vonderharr, the relief prayed for in her
petition. The cause is, therefore, reversed, and the court
directed to proceed in the trial of said cause involving the
probate of the will, the same as if no stipulation or decree
had been entered, so far as the cross-petitioners are con-
cerned.

It is apparent that the stipulation as to the other parties
concerned in this suit was made under a misapprehension
as to its effect upon Anna Vonderharr. It was made with
the understanding that it was mutually agreed by all the
parties that the stipulation would be binding upon all the
parties, under a mistake of fact as to the attitude and re-
lationship of Anna and her posthumous child, and the
binding force of the stipulation and decree upon her.

If the plaintiff and other defendants so elect, they too may have the decree set aside as to them, on motion, and the cause proceed to trial as it stood on the day the stipulation was signed, and the unwarranted decree, heretofore referred to, entered upon the record of the court.—*Reversed and remanded for proceedings in accordance with this opinion.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.