IN RE ESTATE OF AMY M. CARPENTER.

F. W. CURTIS, Executor, et al., Appellees, v. MIKE O'DAY, Appellant.

No. 40045.

554

JUNE 23, 1930.

*Bolter & Murray,* for appellant.

*M. B. Baily* and *Robertson & Wolfe,* for appellees.

ALBERT, J.—Amy M. Carpenter died testate in June, 1924, and one F. W. Curtis was appointed executor of her estate. It is claimed that Curtis, as such executor, filed a bond with the

 proper authorities, and entered upon the discharge of his duties. He died December 7, 1925, and Gertrude M. Curtis, his wife, was appointed executor of his estate, and shortly thereafter, Harold L. Haight was appointed executor, with will annexed, of the estate of Amy M. Carpenter.

Gertrude M. Curtis filed a report in her husband's estate, to which objections were filed, in which it was claimed that there was a sum slightly over $9,000 in the estate of Amy M. Carpenter for which Curtis had not accounted. In a proceeding had on these objections, it was found that $9,176.39 had been collected by Curtis, assets of the estate of Amy M. Carpenter, for which he had never accounted. The date of this finding by the court was October 26, 1926. It appears that the bond given by Curtis was signed by Mike O'Day and W. H. Keairnes, as sureties. In the above proceedings, the court further ordered that Haight, as administrator of the Carpenter estate, was empowered to file a claim in the Keairnes estate for that sum, plus 6 per cent interest from April 1, 1925, and to prosecute the suit now pending in the district court against the bondsmen. No such claim was filed.

W. H. Keairnes died September 22, 1924, and his widow was appointed administrator of his estate. She died December 24, 1924, and Henry and Leo Keairnes were appointed administrators *de bonis non* of the estate of W. H. Keairnes. This latter estate was duly settled and closed on October 30, 1926. It was solvent, and ample to pay more than any claim that the estate of Amy M. Carpenter, deceased, might have against it.

On January 8, 1927, the district court made an order for Haight, as administrator of the Carpenter estate, fixing the time, place, and manner of service upon the bondsmen of F. W. Curtis, as executor, and fixing the amount due and unpaid from Curtis as executor upon the final report of Gertrude M. Curtis; and the order provided that five days' written notice be served upon Mike O'Day and the legal representative of William Keairnes, deceased, to appear and show why judgment should not be rendered against them as sureties on said bond. The Keairneses appeared to this application, and after trial, the application or petition of Haight, as administrator of the Carpenter estate, was dismissed, so far as the Keairneses were concerned.

On August 27, 1927, Mike O'Day appeared, and filed a motion attacking the petition or application of Haight, administrator, in which it was sought to hold O'Day as surety for the default of Curtis. This motion was overruled. On April 5, 1928, O'Day filed an alleged showing why judgment should not be rendered against him, in which he admits that he signed the bond of E. W. Curtis, as executor of the estate of Amy M. Carpenter, deceased, as one of the sureties thereon, and that Keairnes signed said bond, as the other surety, and showed the court that no judgment should be rendered against him for the following reasons: That he has been released by reason of certain promises and laches made by the heirs of Amy M. Carpenter, deceased, through their representative and administrator, Harold L. Haight, through his attorney, in connection with the claim against Mike O'Day, if any, by reason of his having signed said bond for the said F. W. Curtis.

He further sets up the death of his cosurety, Keairnes, and the settlement and closing of that estate, and alleges that the attorney for the estate of Amy M. Carpenter, deceased, told him at different times that he (the attorney) did not expect to make claim against him, or to recover from him or the estate of William H. Keairnes, deceased, anything for or on account of his (O'Day's) having signed said bond, and never made any attempt to collect from him (O'Day) anything on said bond until long after the Keairnes estate was settled and disposed of. He then sets out the proceedings of Haight, administrator, against the Keairnes heirs, both on that estate and in permitting the claim to be filed on this bond, and the action of the court in objecting to the application and refusing to open the Keairnes estate. He further alleges that, by reason of the failure of Haight, the administrator, to file a claim against the Keairnes estate, he has been deprived of his right to recover from said estate anything for and on account of the liability of said estate on said bond, and that, by reason of laches on the part of the administrator of the estate of Amy M. Carpenter and her attorneys, they are estopped from claiming anything from this respondent; that, because the administrator of the estate of Carpenter released the cosurety on the bond, or permitted his release, O'Day is released from liability. He further pleads that Curtis, as executor, deposited money of the Carpenter estate

in the Dunlap State Bank, and that there was and is to his credit in said bank money that the present administrator of this estate is seeking to recover against the bondsmen of Curtis; that, at the time the money was so deposited by Curtis, said bank was solvent, and Curtis deposited the same believing, as an ordinarily prudent man, that the bank was solvent; that, if said money was lost, Curtis, as executor, was not liable, and that his bondsmen are not liable therefor; that, long after the deposit of said money in said bank, it was closed, and went into the hands of a receiver; and that it was subsequently reorganized, as the Dunlap Savings Bank, and took over enough of the assets of the Dunlap State Bank so that they were enabled to pay half of the deposits, as shown by the books of said bank; that there is now on deposit in the Dunlap Savings Bank one half of the money now claimed by the administrator of the Carpenter estate; that there are securities in the hands of the trustees of the Dunlap State Bank out of which may be made at least some of the remaining one half of the money belonging to the depositors in the bank; and that Haight, as administrator, has made no effort to collect any of said money. Wherefore, appellant asks that the application of Haight, as administrator of the Carpenter estate, be denied.

The administrator of the Carpenter estate moves to strike each paragraph and sentence and all of the showing made by the defendant, O'Day, as to why judgment should not be rendered against him in the above matter, after the word "reasons," in the sixth line, on the following grounds:

1. O'Day admits that he executed the bond, a copy of which is attached to said showing and made a part thereof.

2. There is no denial in said showing that this court made the order referred to in said application of the administrator herein, or plea or claim by said Mike O'Day that said order was procured by fraud or other mistake.

3. That the said bond which respondent, Mike O'Day, admits he executed, is the joint and several obligation of said William H. Keairnes and said Mike O'Day, and therefore the release of said Keairnes or his estate, if any, is no defense to said application of the administrator of the estate of Amy M. Carpenter, deceased, as against the respondent.

4. That said order and decree of the court, rendered by

W. C. Ratcliff, judge, referred to in said showing, does not constitute any defense, bar, or estoppel to the right of the said administrator to have judgment against Mike O'Day, as demanded in his said application herein, for the reasons: (a) The liability of said Mike O'Day has been determined and adjudicated by the said order of this court on the 19th day of October, 1926, a copy of which is attached to said showing; (b) the said bond is joint and several; and (c) the said decree rendered by the court in the case tried before Judge Ratcliff was without jurisdiction of the subject-matter and void, because no claim was filed against said estate of William H. Keairnes, deceased, and it was not necessary to file such claim against said estate, and the court had no jurisdiction, therefore, of the subject-matter involved herein in the proceedings upon the application of this administrator to file said claim against said estate of William H. Keairnes, deceased, as shown by the decree of this court rendered on the second day of August, 1927, signed by Judge W. C. Ratcliff, and attached to said showing.

5. And said Mike O'Day was not a party to that hearing and trial upon the application of said administrator for authority to file claim against the William H. Keairnes estate, and therefore the decree rendered upon that hearing is not an adjudication of any of the issues involved herein.

6. That the said order and judgment of October 19, 1926, herein is an adjudication and determination of the liability of said Mike O'Day to the estate of Amy M. Carpenter, deceased.

7. That each and all of the statements made in the showing of Mike O'Day are sham, irrelevant, immaterial, and redundant.

8. That Curtis, as administrator of the Carpenter estate, never obtained any order of court to deposit said funds in said Dunlap State Bank.

On October 15, 1928, this motion to strike, being submitted, was sustained.

Haight, as administrator, amended his application by adding thereto that Curtis, during all of the time he was executor of the Carpenter estate, was president and general manager of the Dunlap State Bank, until its failure, on September 24, 1925; that Curtis had used from the assets of the Carpenter estate the sum of $600 as his fee, for which an accounting is requested.

He further asks that Mike O'Day should appear and show cause why judgment should not be rendered against him as surety on said bond in the sum of $1,729.47, as money due the estate of Amy M. Carpenter, with interest and costs.

A motion was made to strike this amendment, which motion was sustained. Mike O'Day refused to plead further, or to make any further showing why judgment should not be rendered against him; and judgment was rendered against him in the sum of $11,980.54, with 6 per cent interest, and costs of the action. From this action by the court he appeals.

The first question discussed is whether or not the court had the power to enter judgment against these sureties on a finding and order previously made, adjudicating the liability of Curtis as executor of the estate of Amy M. Carpenter.

As heretofore noted, there was a finding that Curtis, as executor, was indebted to the Carpenter estate in an amount over $9,000, and an order was made to the administrator to pay this amount over to the Carpenter estate. Thereafter, notice was given to O'Day, as surety on the Curtis bond, to show cause why such judgment should not be rendered against him, as suggested thereby. This seems to be in exact accord with the provisions of Sections 11984 and 11985, Code, 1927, and in line with our holdings in the following cases: *Weber v. Noth,* 51 Iowa 375; *Knox v. Kearns,* 73 Iowa 286; *Reed v. Lane,* 96 Iowa 454; *Tucker v. Stewart,* 147 Iowa 294; and *Ellyson v. Lord,* 124 Iowa 125.

The order and judgment against the Curtis estate by reason of his being principal on the bond cannot be set aside by the sureties unless they show a good defense to the action on the

 bond. The finding made by the probate court on the hearing of objections to the executor's report, fixing the amount due from him to the estate, was an adjudication binding upon the sureties on his bond, in the absence of fraud or mistake. See cases above cited.

It follows, therefore, from these fixed rules of law that the sureties were not a necessary party in the proceedings to determine the amount of indebtedness owed by Curtis, as executor, to the Carpenter estate. According to the finding of the court at this point, the amount adjudicated was $9,176.39.

If we understand this record correctly, the item of $600 for fees to which it is claimed Curtis was entitled, was not involved or adjudicated in this first order.

It must, therefore, be held that the objection was not well taken that the court had no jurisdiction to proceed in the way it has, to enter judgment against this estate, and that the method taken was the proper method of procedure marked out by Section 11985, Code, 1927, providing that such application shall be heard in a summary manner and judgment rendered against the sureties for the amount of money directed to be paid.

The question of whether or not the deposit of funds belonging to the Carpenter estate by Curtis was made rightfully or wrongfully is beside the issue, as that was necessarily involved in the first order, adjudicating the liability of Curtis.

It is strenuously argued that Haight, as administrator, was estopped from claiming anything at this point as against O'Day by reason of certain representations made to O'Day by the attorney for the Carpenter estate. He alleges that  he relied upon these representations, and therefore did not file a claim against the estate of William Keairnes, his cosurety. With this contention we cannot agree, for the following, among other, reasons: An executor or an administrator of an estate can only act by and with the consent and approval of the court, and in addition thereto, an attorney for the estate cannot speak for the estate itself. If it be assumed that the attorney for the administrator did represent to O'Day that he need not file a claim against the estate of Keairnes, his cosurety, because the Carpenter estate expected or intended to collect the liability under this bond solely from the Keairnes estate, yet, under these circumstances, we would not consider that the doctrine of estoppel applied. There is no question that O'Day had the right to file in the Keairnes estate any claim growing out of the contingent liability involved herein, under Section 11965, Code, 1927.

It is true that the general rule is that the holder of a claim has no affirmative duty to file the same against the estate of the dead principal, and that a failure so to do will not release the surety. *Jackson v. Benson,* 54 Iowa 654; 50 A. L. R. 1214 and

note. It is also equally true that, where the holder makes representations to the surety that the surety need not file such claim against the estate of the dead principal, and that the holder will collect the whole indebtedness from the other parties liable on the paper, and, relying thereon, the surety refrains from filing a claim against the estate by reason thereof, the holder is estopped from afterwards making claim against the surety. *Bullock v. First Nat. Bank,* 196 Iowa 522, l. c. 528; *Security Sav. Bank v. Smith,* 144 Iowa 203; *Yerxa v. Ruthruff,* 19 N. D. 13 (120 N. W. 758, 25 L. R. A. [N. S.] 139, note).

If the claimant under this bond were other than an officer of the court, to wit, an executor or an administrator, there could be no question that this estoppel would be good. The question, therefore, is whether or not the same rule applies to an executor or administrator. As heretofore suggested, such officers act only under the order and approval of the court, and an attorney for an estate, by virtue of his general employment as such, has no right to release his cause of action without express authority from his client. See generally on this subject *Kilmer v. Gallaher,* 112 Iowa 583; *Kwentsky v. Sirovy,* 142 Iowa 385, l. c. 395; *Lingenfelter v. Bowman,* 156 Iowa 649; *Nothem v. Vonderharr,* 189 Iowa 43, 65.

We conclude, therefore, that the defensive matter set up here as an estoppel cannot be so treated, because neither the administrator nor his attorney had authority to do the things on which an estoppel is based.

It is to be remembered that the ruling before the court under consideration is the action of the court in striking the defensive matter pleaded by the surety herein, and in entering judgment  as claimed, by reason of the defendant's refusing to plead further. Under these circumstances, this motion, like a demurrer, admits the truth of all matters pleaded, and the question is, therefore, whether or not any of the matters pleaded constitute a defense.

It is urged that the facts pleaded,—to wit, that there was certain money on deposit with the Dunlap Savings Bank, equaling something like one half of this claim, which had not been

collected by the present administrator of the Curtis estate,—were a fraud upon the court, when it was determined that the amount due from the Curtis estate to the Carpenter estate was $11,000. This contention grows out of the fact that, on the failure of the Dunlap State Bank, certain certificates of deposit were issued to the then executor of the Carpenter estate, in an amount slightly over $5,000. The value of these certificates was not shown, but, shortly after the judgment for $11,980 was entered herein, these certificates were paid, and the proceeds went into the hands of the administrator of the Carpenter estate; so that, in fact, no injury occurred to this surety by reason thereof.

It is further claimed that through the failure of Haight, the administrator of the Carpenter estate, to file a claim in the Keairnes estate, this surety was thereby released. What we

have heretofore said in this opinion disposes of this question against the contention of the surety O'Day.

It is next urged that, in the judgment entered in this proceeding, an item of $600, hereinbefore referred to, was included; and this is assigned as error. With this we are disposed to agree. The proceedings here were to fasten a liability on this surety by reason of a previous adjudication of the amount due from Curtis, as administrator of the Carpenter estate, and in that adjudication this $600 was not included. It should not, therefore, have been included in this judgment.

We are cited to Article I, Section 9, of the Constitution of the state of Iowa, under the claim that this appellant was deprived of his property without due process of law. The question is not argued before us, and suffice it to say, the procedure as marked out in the statute in cases of this character has been substantially followed. He has had his day in court, as contemplated by the section of the Constitution cited.

The item of $600 was improperly included in the original

judgment entered, and it will be reduced in that amount; otherwise, affirmed.—*Modified and affirmed.*

MORLING, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.