**Lori Gail WAITS, Appellee,**

v.

**UNITED FIRE & CASUALTY CO., Appellant.**

**No. 96–937.**

Supreme Court of Iowa.

Dec. 24, 1997.

David L. Phipps and John F. Fatino of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

R. Ronald Pogge and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Appellee, Lori Gail Waits, brought this action to recover underinsured motorist benefits under an automobile liability policy issued to her by appellant, United Fire & Casualty Company. In response to a special interrogatory, the jury found Waits had sustained damages of $178,616.78 as a result of the underinsured motorist's negligence. After reducing the verdict in an amount equal to the settlement payment received by Waits from the underinsured motorist, the court entered judgment against United Fire for $88,318.92, and interest. United Fire appealed. We hold the trial court abused its discretion in admitting evidence of the amount of Waits' settlement with the tortfeasor, and so we reverse and remand for a new trial.

I. *Background Facts and Proceedings.*

Waits was injured on February 15, 1992, when the vehicle she was driving was struck by a car driven by Theresa Fay. The accident occurred on a residential street in Knoxville, Iowa shortly before 1:00 a.m. Waits observed Fay's vehicle coming toward her in Waits' lane of travel, and in an attempt to avoid a collision, drove her car over the right curb and up on the sidewalk. Despite Waits' evasive action, Fay struck Waits' vehicle on the driver's side, causing extensive damage to Waits' automobile. Waits sustained a low back injury in the accident and eventually had surgery to remove a herniated disc.

At the time of the collision, Fay was insured by Allied Mutual Insurance Company. Waits was insured by United Fire under a policy providing underinsured motorist benefits. Waits reached a settlement with Allied, who agreed to pay its remaining policy limits, $90,297.86, to settle Waits' claim against Fay.

(A portion of the limits had already been paid to settle other claims.) United Fire consented to this settlement.

Waits then brought this action to recover the $100,000 limits of the underinsured motorist (UIM) coverage in United Fire's policy. Prior to trial, United Fire stipulated to the following: (1) Fay was 100% at fault in causing the automobile accident; (2) Waits was covered by a policy of insurance issued by United Fire and containing underinsured motorist coverage; (3) the limits of the underinsured motorist coverage were $100,000; and (4) Waits had received the full amount available to her under Fay's insurance policy. Both parties agreed the jury would simply determine the total amount of Waits' damages caused by Fay; the court would then deduct the Allied payment from the jury's verdict and enter judgment for the difference, subject to United Fire's UIM limits.

The case was submitted to the jury on a special interrogatory, asking it to itemize the damages sustained by Waits in the collision with Fay. The jury set Waits' total damages at $178,616.78. The court then reduced this figure by the amount paid by Allied, entering judgment against United Fire for $88,318.92, plus interest. United Fire filed this appeal.

United Fire seeks reversal of the judgment, claiming the trial court erred or abused its discretion in several ways: (1) in striking United Fire's affirmative defense of release and satisfaction; (2) in admitting testimony regarding how the accident occurred; (3) in admitting evidence of and instructing the jury regarding the amount of Waits' settlement with the underinsured motorist; and (4) in giving an "eggshell plaintiff" instruction. Because we think United Fire's third assignment of error requires reversal of the judgment, we consider that issue first. We will discuss additional facts as they relate to the matters at issue.

II. *Tortfeasor's Settlement Payment.*

Prior to trial, United Fire filed a motion in limine to exclude evidence of Allied's policy limits and the settlement amount paid by Allied to Waits on behalf of the tortfeasor,

claiming (1) this information was not relevant to any issue before the jury, and (2) any limited relevance of this evidence was outweighed by its prejudicial impact.[1] The court ruled the challenged evidence was admissible.

At trial, Waits introduced into evidence the amount paid by Allied to settle Waits' claim against Fay. Additionally, the trial court stated the amount of this settlement three separate times in its instructions to the jury: once in its statement of the case, a second time in an instruction telling the jury not to reduce its verdict by the amount of the tortfeasor's settlement because the court would do that later, and a third time in the special interrogatory, again telling the jury to calculate Waits' damages "[w]ithout taking into consideration any reduction of damages due to the previous recovery of $90,297.86." United Fire preserved its challenge to this evidence and the court's instructions by making timely objections.

A. *Scope of review.* "We review the trial court's determination of the relevancy of this evidence for an abuse of discretion." *Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 544 (Iowa 1997). The party claiming an abuse of discretion must show "that the court exercised [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee,* 573 N.W.2d 1, 5 (Iowa 1997). One way in which a ground or reason is shown to be clearly untenable is when it is not based on substantial evidence or is based on an erroneous application of the law. *See City of Windsor Heights v. Spanos,* 572 N.W.2d 591, 592 (Iowa 1997).

■ We review a trial court's instructions for correction of legal error. *See McCarthy,* 572 N.W.2d at 545. An erroneous instruction does not entitle the party claiming error to reversal unless the error was prejudicial. *See Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994).

■ B. *Principles of relevancy and unfair prejudice.* Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 401. Even relevant evidence should not be admitted when "its probative value is substantially outweighed by the danger of unfair prejudice." Iowa R. Evid. 403. Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis, often an emotional one. *See State v. Casady,* 491 N.W.2d 782, 786 (Iowa 1992); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* ¶ 403[04][i][c], at 403-37 to 403-39 (Joseph M. McLaughlin ed., 2d ed.1997) (defining prejudicial evidence as "[e]vidence that appeals to the jury's sympathies[,] ... arouses [its] sense of horror[,] ... provokes [its] instinct to punish[,] ... [or] triggers other intense human reactions").

■ C. *Relevancy.* Waits argues the payment made by Allied on behalf of the tortfeasor is relevant in this case because

> [t]he issues in the underlying trial were not only the amount of damages sustained by Lori Waits, but whether the Defendant had breached this insurance agreement by refusing to pay benefits to her to which she was entitled. To prove that, Waits must prove the extent of her damages and that they exceed $90,297.86. Thus, the amount paid by the tortfeasor is relevant....

Waits' argument ignores the manner in which this case was submitted to the jury. Although Waits certainly had to prove that her damages exceeded $90,297.86 before she would be entitled to recover under the policy, that issue was not disputed by either party and therefore was not submitted to the jury; the calculation of Waits' recovery was left to the court. The only issue before the jury was the amount of damages sustained by Waits as a result of Fay's fault. Waits has

---

1. United Fire's motion in limine also sought to exclude evidence of its UIM limits. The trial court sustained the motion in limine in this respect, ruling that Waits could not introduce evidence of the UIM limits because that could set "a target" for the jury in determining damages and "might be prejudicial to the defendant." Waits has not appealed this ruling.

not suggested how Allied's decision to pay its policy limits is relevant to that issue.

Waits' reliance on our decision in *Leuchtenmacher v. Farm Bureau Mutual Insurance Co.*, 461 N.W.2d 291 (Iowa 1990), is misplaced. In *Leuchtenmacher*, the administrator of the insured's estate brought suit against the decedent's underinsured motorist carrier, seeking to recover UIM benefits. 461 N.W.2d at 292. Prior to trial, the plaintiff settled with the tortfeasor for the tortfeasor's liability limits of $55,000. *Id.* On appeal from a judgment entered against the insurance company for the limits of the UIM coverage, the insurer argued the trial court erred in admitting evidence of the tortfeasor's liability limits. *Id.* This court held evidence of the insurance limits was admissible to "prove the existence of the insurance contract and its terms." *Id.* at 294. We said, "Any direct claim against an insurer on a contract dispute necessarily involves introduction of the insurance policy and its terms." *Id.* at 294–95.

This case is distinguishable from *Leuchtenmacher*. There is no discussion in the *Leuchtenmacher* opinion with respect to any stipulations by the UIM insurer, so we assume that all elements of the insured's UIM claim were at issue. Consequently, it was incumbent upon the insured in *Leuchtenmacher* to prove the terms of the contract and the insured's entitlement to recover pursuant to those terms, including the amount paid by the tortfeasor and damages in excess of this figure. That situation does not exist here because United Fire did not contest the existence of the policy or its terms or the fact that Waits was entitled to recover the amount by which her damages, as determined by the jury, exceeded the tortfeasor's payment. Thus, the payment made by Allied was not relevant to any *disputed* issue of fact upon which the *jury* was to make a determination. *See Johnson v. State Farm Auto. Ins. Co.*, 504 N.W.2d 135, 138 (Iowa App. 1993) (affirming, in suit to recover UIM benefits, district court's exclusion of evidence of the amount of insured's settlement with underinsured motorist).

■ D. *Prejudice.* United Fire also claims that admission of this evidence result-

ed in substantial prejudice, citing *Handley v. Farm Bureau Mutual Insurance Co.*, 467 N.W.2d 247 (Iowa 1991). In *Handley*, the plaintiffs brought a wrongful death claim against the alleged tortfeasor as well as a contract claim against their own insurance company for UIM benefits. 467 N.W.2d at 248. The UIM insurer appealed the trial court's refusal to sever the tort suit from the contract claim. *Id.* It asserted the jury would return an inflated damage award in the wrongful death case due to prejudice resulting from evidence of the tortfeasor's liability limits and the plaintiffs' UIM limits, evidence that would normally be admissible in the contract case but not in the tort suit. *Id.* at 249. We acknowledged the potential for prejudice when there is evidence before the jury establishing the tortfeasor's liability limits and the injured party's UIM limits: "It is ... *likely* that evidence of insurance will cause the jury to return a larger verdict against [the tortfeasor than] it would have if it were unaware that insurance existed *and the amounts thereof.*" *Id.* at 250 (emphasis added). Based on the likelihood of prejudice, we held the trial court abused its discretion in refusing to sever the claim against the UIM insurer from the claim against the underinsured motorist. *Id.*

Waits argues the reasoning of *Handley* is not applicable here, however, because the evidence would be admitted against an insurance company, not against the tortfeasor. Because the defendant is an insurance company, Waits contends, it cannot complain about the admission of insurance evidence. Waits' argument overlooks the fact that the same rules of evidence apply in all lawsuits regardless of the defendant's identity. We held in *Handley* that evidence of the tortfeasor's policy limits will likely improperly influence the jury to return a larger damage award for the injured party than it otherwise would. *Id.* This same likelihood exists when the determination of the injured party's damages is made in the context of a contract action for UIM benefits rather than a tort suit against the underinsured motorist. The prejudice is not lessened or rendered fair by the mere fact that the recipient of the prejudice is an insurance company.

Even if we assume evidence of Allied's payment had some relevancy to disputed factual issues in this case, we think any relevancy was substantially outweighed by not only the danger, but the likelihood, of unfair prejudice. *See Casady,* 491 N.W.2d at 786 (balancing actual need for evidence against the degree to which the jury will tend to base its decision on an improper basis). This evidence served no purpose other than to inform the jury that it must return a verdict in excess of $90,297.86 in order for Waits to recover under her UIM coverage. An insurer should be able to avoid such prejudice by stipulating to any matters to which the tortfeasor's liability limits and/or settlement payment would be relevant. That is what United Fire did here.

■ *E. Conclusion.* We hold the trial court's admission of evidence of Allied's payment was an abuse of discretion. Additionally, it was reversible error to instruct the jury concerning the amount paid by Allied.[2] Therefore, we reverse and remand for a new trial. Because the other issues raised on appeal are likely to occur again on remand, we will address them now.

III. *Effect of Release.*

A. *Background facts.* We begin our discussion of this issue with a review of the pertinent terms of the release signed by Waits to effectuate her settlement with the tortfeasor, Fay. In the release, Waits agreed to "forever release, acquit and discharge

Theresa M. Fay and Tommy G. Fay and Allied Mutual Insurance Company . . . from any and all claims, causes of action or demands arising out of an automobile accident occurring on or about February 15, 1992." (Tommy Fay owned the automobile operated by Theresa Fay.) The release further provided that it included "all claims, causes of action or demands whether known or unknown and regardless of the theory of recovery."

In its answer, United Fire alleged that Waits had released the tortfeasor from any liability beyond payment of the agreed-upon settlement. It claimed this settlement "constitutes a complete satisfaction of any potential claims which [Waits] might otherwise have had for the injury alleged in [her] petition." United Fire also alleged that as a consequence of the settlement, Waits could not meet the policy requirement that she be "legally entitled to recover" damages from the underinsured motorist that were not fully compensated by the underinsured motorist's liability insurer. Prior to trial, Waits filed a motion to strike, asking the court to dismiss this defense. *See* Iowa R. Civ. P. 104(c) (stating the "[s]ufficiency of any defense may be raised by motion to strike it"). The trial court granted Waits' motion.

■ *B. Scope of review.* A motion to strike under rule 104(c), like a motion to dismiss, admits the truth of all matters pleaded.[3] *See Fidelity Sav. Bank v. Worm-*

---

**2.** We appreciate the trial court's concern in this case that the jury would be left to speculate concerning any insurance available to Waits from Fay's insurer. *Cf. Price v. King,* 255 Iowa 314, 321, 122 N.W.2d 318, 323 (1963) (noting jurors "know what everyone else knows, i.e. that some insurance company may have some interest in some phase of the lawsuit"). Our decision is not meant to preclude an instruction to the jury that puts the jury's determination of Waits' damages into context. The trial court here instructed the jury:

This lawsuit arose out of an automobile collision which occurred on February 15, 1992. In this collision, the operator of the other motor vehicle, Theresa Fay, was negligent and her negligence was a proximate cause of injuries to the Plaintiff. Plaintiff has settled with the operator of the other motor vehicle, Theresa Fay's insurer. Plaintiff received $90,297.86 from Theresa Fay's liability insurance carrier which was the full amount of insurance cover-

age available under Theresa Fay's policy. Plaintiff has brought this action against United Fire & Casualty Company. United Fire & Casualty Company provided underinsurance coverage to the plaintiff. Plaintiff claims her damages exceed the amount received in the settlement with the other driver and seeks recovery of damages in excess of the amounts paid by the other driver. United Fire & Casualty Company denies that plaintiff is entitled to any compensation under its underinsurance coverage.

With the exception of the *amount* of Waits' prior recovery, the remainder of the court's statement of the case to the jury was necessary for the jurors' understanding of the nature of the dispute before them.

**3.** The facts previously reviewed in this division were contained in the petition and answer and were undisputed by the parties. The disagreement here is not a factual one but instead centers

*houdt Lumber Co.,* 251 Iowa 1121, 1126, 104 N.W.2d 462, 466 (1960); *In re Carpenter's Estate,* 210 Iowa 553, 561, 231 N.W. 376, 380 (1930). The party challenging the defense must establish the legal insufficiency of the defense from the face of the pleading attacked. *See Jacobsen v. Moss,* 221 Iowa 1342, 1346, 268 N.W. 162, 164 (1936). We will affirm the trial court's striking of a defense if we conclude the defense alleged is legally inadequate. *Cf. Schmidt v. Wilkinson,* 340 N.W.2d 282, 284 (Iowa 1983) (stating, in reference to a motion to dismiss under rule 104(b), that dismissal will be upheld where "no state of facts is conceivable under which plaintiff might show a right of recovery").

C. *Complete satisfaction of claims.* United Fire points out Waits gave the underinsured motorist a full and complete *release* and did not preserve any claim for UIM benefits. It suggests "Waits could have provided the Fays with a *covenant not to sue* if she desired to settle with them without acknowledging full satisfaction of her claim." (Emphasis added.) We find any distinction between a covenant not to sue and a release of no assistance in resolving the issue before us.

■ Documents known as covenants not to sue were devised to avoid the harshness of the common-law rule that a release of one tortfeasor or obligor automatically released all tortfeasors or obligors, regardless of the intent of the parties to the release. *See Pedersen v. Bring,* 254 Iowa 288, 291, 117 N.W.2d 509, 511 (1962) (stating "a covenant not to sue is an *artificial* means of evading the general rule that a full release of one ... also releases others") (emphasis added); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 49, at 334 (5th ed.1984) (referring to a covenant not to sue as a "*technical* evasion, which is the most obvious of subterfuges for circumventing an inconvenient common law rule") (emphasis added)

[hereinafter Prosser]; *see generally Adams v. Dion,* 19 Ariz.App. 69, 504 P.2d 1292, 1294 (1973) (referring to a covenant not to sue as "nothing short of legalistic 'black magic' "), *vacated,* 109 Ariz. 308, 509 P.2d 201 (1973). Our court obviated the need for this subterfuge in *Community School District v. Gordon N. Peterson, Inc.,* 176 N.W.2d 169 (Iowa 1970). In that case we rejected the common-law rule that a release of one obligor automatically released all others who are or may be liable. *Community Sch. Dist.,* 176 N.W.2d at 175. We held settlement agreements were to be interpreted according to the intent of the parties as "determined by the terms of the contract aided by such extrinsic evidence as may be properly offered." *Id.* Under the modern rule, the effect of a settlement does not turn on the technical distinction between a release and a covenant not to sue. Rather, the effect of a settlement is determined by the intent of the parties to the settlement as shown by the terms of the settlement documents. We also note that a release and a satisfaction are not the same thing: "A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration." Prosser § 49, at 332.

■ Turning to the terms of the release, we find no language indicating Waits intended to abandon her UIM claim against United Fire. United Fire was not included as one of the parties released from liability. To the contrary, the release contemplated a recovery of UIM benefits as shown by the following language: "It is the intent of the parties that this Release would preclude any subrogation action by Lori Waits' automobile liability insurance carrier for any sums paid to Ms. Waits under the terms of any policies of insurance."[4] Additionally, the release contained no acknowledgment that the amount received fully compensated Waits for her injuries. Therefore, we reject United Fire's argument that there has been a complete

on the legal effect of the release on Waits' contractual rights under United Fire's policy.

**4.** United Fire does not complain about this provision in the release, apparently because it anticipated when it consented to the settlement between Waits and Fay that its subrogation rights

would not be preserved. *See generally Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 851 (Iowa 1988) (noting consent-to-settlement clause is designed to protect the UIM carrier's subrogation rights).

satisfaction of all potential claims arising from the collision.

D. *Compliance with policy requirements.* To understand United Fire's second argument with respect to the effect of the release, we turn to the contractual obligation assumed by United Fire under its policy. United Fire's policy requires it to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury' caused by an accident." The policy further provides that any amount otherwise payable under the UIM coverage "shall be reduced by all sums ... [p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." The parties agree this latter provision requires that any payment by the tortfeasor be deducted from the compensatory damages the insured is legally entitled to recover from the tortfeasor and hence, from United Fire.

United Fire argues Waits is not "legally entitled to recover" any damages other than the sum already paid by Allied because Waits fully released Fay from any further liability. It asserts Waits should have given Fay a covenant not to sue in order to comply with the policy requirement of "legally entitled to recover." *Cf. Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 532 (Iowa 1995) (relying, in part, on the technical distinction between a release and a covenant not to sue in concluding insured was "legally obligated to pay" the injured party despite settlement between insured and injured party). Under a covenant not to sue, argues United Fire, Fay would have remained legally liable for Waits' damages, although Waits would have been contractually bound not to pursue any recovery. *See id.* Whether the technical distinction between a release and a covenant not to sue is significant here turns on the meaning of the policy language, "legally entitled to recover."

Initially, we note this language is taken from Iowa's underinsured motorist statute. Iowa Code section 516A.1 (1995) provides that UIM coverage must provide "protection of persons insured under such policy who are *legally entitled to recover* damages from the owner or operator of an ... underinsured motor vehicle." (Emphasis added.) Thus, we interpret UIM coverage in a manner consistent with the legislature's goal in enacting the underinsured motorist statute. *See Mewes v. State Farm Auto. Ins. Co.,* 530 N.W.2d 718, 722 (Iowa 1995) ("We construe the insurance policy in light of the purposes and intent of section 516A.2."); *Wetherbee v. Economy Fire & Cas. Co.,* 508 N.W.2d 657, 660 (Iowa 1993) ("In determining the meaning of this phrase ['legally entitled to recover'], we first look for guidance to the legislature's intent in including this element in Iowa's underinsured motorist statute."); *Leuchtenmacher,* 461 N.W.2d at 293 ("In ascertaining legislative intent, we consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied.").

The purpose of Iowa's UIM statute "is to provide compensation to an insured who is the victim of an underinsured motorist's negligence to the same extent as if the underinsured motorist were adequately insured." *Wetherbee,* 508 N.W.2d at 660; *see also* 8C John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 5071.45, at 102–03 (1981 & Supp.1997) [hereinafter Appleman]. We interpret the statute, and hence UIM coverage, liberally to accomplish this objective. *See, e.g., American States Ins. Co. v. Tollari,* 362 N.W.2d 519, 522 (Iowa 1985) (adopting "broad coverage" view of underinsured motorist coverage and rejecting "narrow coverage" view); *see also* Appleman § 5071.45, at 104 (stating UIM statutes are interpreted liberally). This approach to the interpretation of UIM coverage is evident in our prior cases interpreting the phrase "legally entitled to recover." *E.g., Wetherbee,* 508 N.W.2d at 660; *Leuchtenmacher,* 461 N.W.2d at 294. These decisions show that our court has given this phrase a liberal interpretation, not a literal one.

In *Wetherbee,* we rejected a literal interpretation of the policy in favor of an interpretation more consistent with the purpose of underinsured motorist coverage as envisioned by the legislature. 508 N.W.2d at 660. In that case, we permitted the insured, the spouse of the deceased injured person, to

pursue a claim against her UIM carrier even though she was not the one authorized by statute to pursue the wrongful death claim, and in that sense, was not literally "legally entitled to recover" damages from the underinsured motorist. *Id.* at 661. We held it was sufficient that the insured "suffered damages caused by the fault of the underinsured motorist and [was] entitled to receive those damages." *Id.*

Similarly, in *Leuchtenmacher,* we held an insured could settle with the underinsured motorist without jeopardizing his or her recovery of UIM benefits. 461 N.W.2d at 294. We concluded a judgment against the underinsured motorist was not required to establish that the insured was "legally entitled to recover" damages from the underinsured motorist. *Id.*

Both *Wetherbee* and *Leuchtenmacher* interpret the "legally-entitled-to-recover" requirement in a way that advances the legislature's purpose of compensating the injured party as if the underinsured motorist were adequately insured. This purpose is not furthered by a requirement that the underinsured motorist be liable to the injured party *at the time the injured party seeks to recover UIM benefits.* Therefore, we will not interpret the language, "legally entitled to recover," literally. We think this language is simply meant to limit UIM benefits to what the injured person would have been entitled to recover from the underinsured motorist *if* the underinsured motorist had been adequately insured and *if* a tort suit against the underinsured motorist had been pursued. *See* 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 34.1, at 106 (2d ed. 1995 & Supp.1997).

The technical distinction between a covenant not to sue and a release has no relevancy to this interpretation of the phrase "legally entitled to recover." Under a release, the tort obligation is discharged; un-

der a covenant not to sue, the obligation is not discharged, but the injured party agrees not to enforce that obligation. The goal of the parties and the practical result are the same: to preclude any further liability of the tortfeasor to the injured party. *See* 66 Am. Jur.2d *Release* § 2, at 679 (1973 & Supp. 1997) (noting the final result as between the parties to a covenant not to sue and a release "is the same"). Neither type of settlement precludes an insured from showing what damages he or she would have been entitled to recover from the underinsured motorist had a tort suit been pursued to judgment.

In conclusion, we give the phrase "legally entitled to recover" a liberal, not a literal, interpretation. It simply requires the insured to prove the damages he or she would have been entitled to recover had a lawsuit against the underinsured motorist been taken to judgment. Any technical distinction between a release and a covenant not to sue that goes to the underinsured motorist's *ongoing* liability to the injured party is irrelevant. Consequently, Waits' release of Fay is not a defense to Waits' UIM claim. The trial court properly struck the defense from United Fire's answer.

### IV. *Evidence of Facts of Accident.*

In its motion in limine filed prior to trial, United Fire asked the court to preclude Waits from introducing any evidence of how the accident occurred.[5] The trial court overruled this aspect of United Fire's motion and at trial Waits and a passenger in her car described how the accident happened. United Fire objected to this testimony on the ground it was irrelevant.

On appeal, United Fire claims this evidence is not relevant to the only issue submitted to the jury, namely, the extent of Waits' damages. It points out that it stipulated to Fay's fault in causing the accident. Waits responds that the mechanism of the

---

5. United Fire also objected prior to trial to any evidence of Fay's intoxication. Although Waits agreed not to introduce such evidence, one of Waits' medical witnesses read from Waits' medical records, which included a reference to "a drunk driver." The trial court granted United Fire's motion to strike and instructed the jury to

disregard the doctor's statement. We trust this incident will not repeat itself on retrial, so we do not address United Fire's claim that it should have been granted a new trial because of the unfair prejudice resulting from the doctor's comment.

accident is relevant to the issue of damages because it corroborates the permanent and serious nature of her injuries. We apply the same principles of relevancy and standard of review discussed above in connection with the trial court's admission of evidence of Allied's settlement payment.

We think the way in which the accident happened is relevant to two factual issues: (1) whether the accident caused any injuries to Waits; and (2) the nature and extent of any such injuries. Evidence of the force of the impact, Waits' position in the vehicle, and the location and extent of the damage to her vehicle is probative of these issues. These issues, in turn, are probative of the amount of damages sustained by Waits as a result of Fay's fault. If evidence of the accident itself were excluded, the jury would have to determine if Waits was seriously injured in "the accident" without knowing whether "the accident" was a light tap to the bumper of Waits' car or a more violent and forceful collision.

■ United Fire contends that even if this evidence is relevant, it is unfairly prejudicial. The trial court was required to balance the plaintiff's need of this evidence against the danger the jury would make a decision on an improper basis, such as for an emotional reason. *See Casady,* 491 N.W.2d at 786. Although Fay's reckless conduct may tend to arouse the jury's instinct to punish, we think the probative value of this evidence weighs heavily in favor of its admission. The need for this evidence is great because it is the only way for Waits to establish the nature and severity of the force causing her injury. We conclude the trial court did not abuse its discretion in admitting this evidence.

## V. *"Eggshell Plaintiff" Instruction.*

A. *Background.* The court submitted the following instructions to the jury concerning the effect of pre-existing conditions on the jury's assessment of damages:

### Instruction No. 9

If you find Lori Gail Waits had a preexisting condition before this incident and this condition was aggravated by this incident causing further suffering, then she is entitled to recover damages caused by the aggravation. She is not entitled to recover for any physical ailment or disability which existed before this incident or for any injuries or damages which she now has which were not caused by Theresa Fay's actions.

### Instruction No. 10

If the Plaintiff had a prior condition making her more susceptible to injury than a person in normal health, then Theresa Fay is responsible for all injuries and damages which are experienced by Lori Gail Waits proximately caused by Theresa Fay's actions, even though the injuries claimed produce a greater injury than those which might have been experienced by a normal person under the same circumstances.

United Fire claims the court erred in giving the latter instruction, commonly referred to as the "eggshell plaintiff" instruction, for two reasons: (1) there is no evidentiary support for this instruction; and (2) the jury was given no guidance as to the circumstances that would warrant application of this instruction rather than the prior instruction.

■ B. *Principles for review of instructions.* We review a trial court's instructions for correction of legal error. *See McCarthy,* 572 N.W.2d at 545. A material misstatement of the law warrants reversal. *See Benn v. Thomas,* 512 N.W.2d 537, 539 (Iowa 1994). It is also reversible error to submit an instruction having no support in the record. *See Bradt v. Grell Constr., Inc.,* 161 N.W.2d 336, 340 (Iowa 1968). "When considering whether evidentiary support for an instruction exists, we give the evidence the most favorable construction it will bear." *Hughes v. Massey–Ferguson, Inc.,* 522 N.W.2d 294, 295 (Iowa 1994). Finally, reversal is required when instructions are conflicting and confusing. *See Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986). An instruction is not confusing if, when the instructions are considered as a whole, one must conclude "that the jury could not have misapprehended the issue presented by the challenged instruction." *Id.* With these principles in mind, we turn now to United Fire's objections to the eggshell plaintiff instruction.

C. *Evidentiary support for eggshell plaintiff instruction.* Waits testified to the following facts at trial. Waits injured her back in 1987 during the course of her employment with Pella Corporation. She was treated conservatively for this injury and eventually returned to the same assembly-line job she had before her work-related back injury. Between late 1987 and the car accident in 1992, Waits had no back pain or disability. During this period, she performed her job and engaged in other physical activities such as walking and biking with no problem. After the 1992 accident, however, Waits immediately experienced low back pain. When conservative measures proved unhelpful, Waits had surgery to remove a herniated disc at the L5–S1 level.

Dr. Bashara, Waits' treating physician, testified that Waits had a herniated disc at the same level in 1987 and that it "had healed." He said it was possible that Waits would be asymptomatic after her 1987 injury, but that her prior injury would make her more susceptible to a back injury in 1992. He further testified that surgery was not inevitable after the 1987 injury and in the majority of cases involving injuries similar to Waits' 1987 injury, the patient will heal without surgery.

The testimony of Waits and Bashara provided a factual basis for the court's instruction on the eggshell plaintiff rule. From this evidence the jury could conclude that Waits' back condition was a nondisabling, asymptomatic condition that made her more susceptible to injury than a normal person. *See Becker v. D & E Distrib. Co.,* 247 N.W.2d 727, 731 (Iowa 1976) (applying rule where tortious act superimposed on a "dormant condition" resulted in pain and disability, and holding tortfeasor liable for the full disability). Under these circumstances, the jury would have been entitled to apply the eggshell plaintiff rule and hold Fay responsible for all injuries and damages experienced by Waits as a result of the 1992 accident.

United Fire argues, however, that the eggshell plaintiff instruction should not be given when there is evidence allowing the jury to apportion the plaintiff's present disability between her prior condition and the injury caused by the tortfeasor. It relies on Bash-ara's testimony that in his opinion Waits *presently* has a twelve percent permanent partial physical impairment of her body as a whole because of her back condition and that two percent of this impairment is attributable to Waits' back condition resulting from her 1987 injury. Notably, United Fire points to no testimony that Waits had a two percent impairment *before* the 1992 accident.

We disagree with United Fire's contention that Bashara's testimony precluded an eggshell plaintiff instruction. Unless the jury believed that Waits had a two percent impairment *before* the accident, the fact that her *subsequent* disability can be apportioned between the current injury and a prior non-disabling, asymptomatic condition does not prevent her from recovering damages for the entire disability from Fay. Under the eggshell plaintiff rule, the current injury is the proximate cause of Waits' entire disability, even though that disability is two percent greater than it would have been without her prior back injury.

United Fire also claims there was evidence demonstrating Waits' condition was progressive and would have worsened even in the absence of the 1992 accident. Again, this evidence, even if believed by the jury, does not prevent application of the eggshell plaintiff rule. "A tortfeasor is liable for damages suffered by an 'eggshell' plaintiff which are a natural consequence of the accident, even though the plaintiff may inevitably suffer similar injuries from a pre-existing condition unrelated to the accident." *Sumpter v. City of Moulton,* 519 N.W.2d 427, 434 (Iowa App.1994).

D. *Conflict between aggravation instruction and eggshell plaintiff instruction.* United Fire contends the jury should have been instructed more fully on which instruction to follow. In essence, this contention is really a claim that the instructions in their present form are conflicting and confusing. Upon our review of the instructions as a whole, we agree the jury needed additional guidance under the unusual circumstances here, where both an aggravation instruction and an eggshell plaintiff instruction were submitted in the same case.

The evidence was undisputed that Waits had a prior or pre-existing back condition, and that her back was further injured or reinjured in the accident. The fighting issue was whether some of her present pain and disability was attributable to her prior back condition and if so, whether that portion of her damages was recoverable from Fay. Under the instructions given, the jury was required to distinguish between "a pre-existing condition" that was made worse, i.e. aggravated, by the accident, and "a prior condition" that made the plaintiff more susceptible to injury. In the trial court's view, the testimony here would have permitted the jury to find *both* circumstances existed;[6] in other words, the jury could have concluded Waits' back condition made her more susceptible to injury and was aggravated by the 1992 accident. Under these circumstances, both instructions would apply, giving rise to a direct conflict in what the jury was to do. One instruction told the jury Waits could not "recover for any physical ailment ... which existed before this incident" and the other instruction told the jury she could recover "for all injuries and damages ... proximately caused by [Fay], even though the injuries claimed produce a greater injury than those which might have been experienced by a normal person." We think the confusion in this case is partially attributable to the fact the instructions focus on the *condition,* rather than the disability and pain for which compensation is sought.

■ To clarify the scope of the instructions involved here, we start with the general rule that a defendant is liable only for injuries caused by the defendant's fault, and not for pain or disability resulting from other causes. *See Becker,* 247 N.W.2d at 730. Thus, if a plaintiff had a prior back injury that caused pain and a ten percent disability *before* the injury inflicted by the defendant occurred, the defendant would not be responsible for the disability and pain that predated the current injury, but only for any *additional* pain and disability caused by the current injury. Under these circumstances, an ag-

gravation instruction is appropriately submitted to the jury.

■ The eggshell plaintiff rule is an *exception* to the general rule. *See id.* This exception applies only when the pain or disability arguably caused by another condition arises *after* the injury caused by the defendant's fault has lighted up or exacerbated the prior condition. The law on this point was clearly stated in *Becker:*

> It is also apparent mere existence of a prior nondisabling, asymptomatic, latent condition is not a defense. A tort-feasor whose act, superimposed upon such condition, results in an injury may be liable in damages for the full disability. In these cases the injury, and not the dormant condition, is deemed to be the proximate cause of the pain and disability.

*Id.* at 731; *accord Benn,* 512 N.W.2d at 539. In the situation described in *Becker,* the tort-feasor would be liable for the entire damage, *see* 247 N.W.2d at 731, so an eggshell plaintiff instruction is properly given.

We think in the case before us the jury would not have understood which instruction it was to follow without some additional guidance. This uncertainty is highlighted by the parties' differing interpretation of the instructions. United Fire claims the choice between the aggravation rule and the eggshell plaintiff rule turns on whether the disability and pain can be apportioned between the prior condition and the second injury. It also submits the eggshell plaintiff instruction applies "only if the injury from the accident was separate and distinct from the original condition but made possible by it." Waits argues the distinguishing factor is the nature of the pre-existing condition: where the pre-existing condition is dormant, nondisabling and asymptomatic, the eggshell plaintiff rule applies, but where the pre-existing condition has already caused symptoms or disability, the aggravation rule applies.

■ We think neither party is entirely right, although the rule suggested by Waits reflects the usual factual pattern. Whether the eggshell plaintiff rule applies or the ag-

---

6. Because Waits did not cross-appeal from the trial court's instruction on the aggravation rule, we make no decision on the sufficiency of the evidence to support that instruction.

gravation rule applies depends in the first instance on when the pain or disability for which compensation is sought arose. Where the prior condition resulted in pain or disability *before* the second injury, the tortfeasor is liable only for the *additional* pain and disability arising after the second injury. With respect to any pain or disability arising *after* the second injury, the tortfeasor is fully responsible, even though that pain and disability is greater than the injured person would have suffered in the absence of the prior condition.

United Fire suggests that it is improper for the court to give both an eggshell plaintiff instruction and an aggravation instruction. It contends the trial court should decide which instruction fits the proven facts and give only that instruction. We disagree. Where there is testimony that establishes a factual basis for both instructions, a trial court does not commit reversible error by submitting both instructions to the jury. It is the jury's responsibility to resolve factual disputes, not the court's responsibility. Moreover, we can envision situations where the principles embodied in both instructions might apply. For example, if the prior condition has caused some disability or pain that is aggravated by the second injury and at the same time the additional harm resulting from the second injury is greater than it would have been in the absence of the prior injury, the jury would need both instructions to accurately determine the defendant's liability. Applying the aggravation rule and the eggshell plaintiff rule in the example given, the jury should compensate the plaintiff for the entire pain and disability resulting from the defendant's fault but not for any pre-existing pain and disability.

■ Here the trial court held a factual basis existed for both instructions. Consequently, the court did not err in submitting both to the jury.

### VI. *Disposition.*

Because the only disputed factual issue in this case was the extent of damages caused by the underinsured motorist, evidence of the underinsured motorist's settlement payment was irrelevant. Therefore, the trial court abused its discretion in admitting this evidence. Additionally, because this evidence was unfairly prejudicial, the trial court erred in instructing the jury on the amount of the payment made on behalf of the underinsured motorist.

The insured's release of the underinsured motorist did not automatically release the UIM insurer from any liability it had under its insurance contract. Moreover, the release did not preclude the insured from establishing that she was "legally entitled to recover" damages from the underinsured motorist in excess of the amount paid by the underinsured motorist in settlement. The trial court did not err in striking the UIM insurer's defense of release and satisfaction.

Evidence of how the accident happened was relevant even though the UIM insurer stipulated that the underinsured motorist was solely at fault. This evidence was probative of the nature and extent of the insured's damages. Consequently, the trial court did not abuse its discretion in admitting testimony concerning how the accident occurred.

■ The trial court properly instructed the jury on both the eggshell plaintiff rule and the aggravation rule. There was evidence to support giving the eggshell plaintiff instruction and the instructions were not mutually exclusive. The trial court erred, however, in failing to explain to the jury how it was to decide which instruction was applicable under the facts of this case. The jury should have been told the aggravation rule excluded liability for pain and disability existing prior to the accident and the eggshell plaintiff rule made any pain and disability arising after the accident compensable, provided the pain and disability resulted from the accident.

We reverse and remand for a new trial.

**REVERSED AND REMANDED.**