**IN THE COURT OF APPEALS OF IOWA**

No. 17-1583
Filed November 21, 2018

**SUSANA RODRIGUEZ,**
        Plaintiff-Appellant,

**vs.**

**CYNTHIA MARIE SPENNER,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Woodbury County, Duane E.

Hoffmeyer, Judge.


        Susana Rodriguez appeals from an adverse judgment in her personal-injury

suit against Cynthia Spenner.  **AFFIRMED.**



        Robert D. Tiefenthaler of Tiefenthaler Law Office, PC, Sioux City, for

appellant.

        Patrick L. Sealey and Jacob V. Kline of Heidman Law Firm, PLLC, Sioux

City, for appellee.



        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Susana Rodriguez's vehicle was struck from behind by Cynthia Spenner's vehicle at an intersection. Rodriguez filed this personal-injury action claiming Spenner was negligent and caused Rodriguez injuries. Rodriguez appeals from an adverse judgment, claiming the district court erred in instructing the jury and in denying her motion for new trial.

We review challenges to jury instructions for the correction of errors at law. *Sleeth v. Louvar*, 659 N.W.2d 210, 213 (Iowa 2003). Our review of a district court's ruling on a motion for new trial depends upon the grounds raised in the motion. *Bryant v. Parr*, 872 N.W.2d 366, 375 (Iowa 2015). If the motion for new trial was based upon a discretionary ground, we review the court's ruling for an abuse of discretion. *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006).

***Jury Instructions.*** Rodriguez objected to the trial court giving a proposed jury instruction on pre-existing conditions.[1] In the alternative, Rodriguez proposed this modified instruction:

---

[1] The court instructed the jury on aggravation of a preexisting condition (Instruction No. 25) and—at Rodriguez's request—on the "eggshell plaintiff" (Instruction No. 26). Instruction No. 25 provided:

> If you find Plaintiff Rodriguez had a pre-existing condition in her neck and/or shoulder before this collision and this condition was aggravated or made active by this collision causing further suffering and/or disability, then she is entitled to recover damages caused by the aggravation. She is not entitled to recover for any physical ailment or disability which existed before this incident or for any injuries or damages which she now has which were not caused by Defendant Spenner's actions.

Instruction No. 26 stated:

> If Plaintiff Rodriguez had a condition making her more susceptible to injury than a person in normal health, then Defendant Spenner is responsible for all injuries and damages which are experienced by Plaintiff

> If you find Plaintiff [Rodriguez] had a pre-existing condition before this collision and this condition was aggravated or made active by this collision causing further suffering and/or disability then she is entitled to recover damages caused by the aggravation. She is not entitled to recover for any physical ailment or disability which existed before this incident or for any injuries or damages which she now has which were not caused by the defendant's actions.
>
> However, if you determine that any pre-existing condition was asymptomatic before the collision, then you should refer to [proposed] Instruction No. 18 [Previous Infirm Condition Instruction].

The trial court overruled Rodriguez's objection to Instruction No. 25 and denied the request for the modified instruction.

We must address whether there is sufficient evidence of a preexisting condition to warrant the instruction. "When we weigh the sufficiency of the evidence to support a requested instruction, we review the evidence in the light most favorable to the party seeking the instruction." *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 824 (Iowa 2000).

Viewing the evidence in the light most favorable to Spenner, who sought the instruction, the jury could have found the following. On May 22, 2013, Rodriguez (in front) and Spenner (behind Rodriguez) were stopped at a traffic light. The two vehicles began to move forward, Rodriguez stopped her vehicle, and Spenner's right front bumper came in contact with Rodriguez's left rear bumper. At the time the vehicles came in contact, Spenner had not applied the gas pedal and was traveling less than five miles per hour. Rodriguez was wearing her seatbelt, airbags did not deploy, and no part of her body came into contact with any part of her car. Neither vehicle showed visible damage, and neither vehicle

---

that are caused by Defendant's actions, even though the injuries claimed produce a greater injury than those which might have been experienced by a normal person under the same circumstances.

was repaired after the incident. Rodriguez alleged the incident caused damage to her neck and left shoulder and ultimately resulted in the necessity for two surgeries.

Rodriguez's medical records, however, indicate she suffered migraines dating back to 1986, neck pain dating back to 1987, shoulder pain dating back to 1998, and hand pain and numbness dating back to 2002. Spenner's counsel elicited testimony that while Rodriguez did not seek regular medical treatment for these conditions from 2009 to 2013, she did have multiple musculoskeletal problems which required visits to a doctor, including an issue with tingling and numbness in her hand. There was also evidence that Rodriguez avoided medical treatment due to financial concerns. Rodriguez's medical records include two magnetic resonance imagings (MRIs) read by different radiologists. The radiologist from the 2009 MRI described the findings as indicating "moderate bilateral neuroforaminal stenosis" ("the narrowing of the holes where the nerves come out"). The radiologist from the 2013 MRI described "the disk protrusion causes moderate to severe left foraminal stenosis." Dr. Johnson stated the only difference between the two MRI studies "might be if you really picked through the language here, and different radiologists will often use different language to describe the same thing." We conclude there was evidence to support the giving of a preexisting condition that may have been aggravated by the collision.

In *Waits v. United Fire & Casualty, Co.*, 572 N.W.2d 565, 577–78 (Iowa 1997), our supreme court addressed a claim by an insurance company that it was improper to give instructions on both the aggravation of a preexisting condition and an eggshell plaintiff.

Whether the eggshell plaintiff rule applies or the aggravation rule applies depends in the first instance on when the pain or disability for which compensation is sought arose. Where the prior condition resulted in pain or disability *before* the second injury, the tortfeasor is liable only for the *additional* pain and disability arising after the second injury. With respect to any pain or disability arising *after* the second injury, the tortfeasor is fully responsible, even though that pain and disability is greater than the injured person would have suffered in the absence of the prior condition.

[The defendant] United Fire suggests that it is improper for the court to give both an eggshell plaintiff instruction and an aggravation instruction. It contends the trial court should decide which instruction fits the proven facts and give only that instruction. We disagree. *Where there is testimony that establishes a factual basis for both instructions, a trial court does not commit reversible error by submitting both instructions to the jury.* It is the jury's responsibility to resolve factual disputes, not the court's responsibility. Moreover, we can envision situations where the principles embodied in both instructions might apply. For example, if the prior condition has caused some disability or pain that is aggravated by the second injury and at the same time the additional harm resulting from the second injury is greater than it would have been in the absence of the prior injury, the jury would need both instructions to accurately determine the defendant's liability. Applying the aggravation rule and the eggshell plaintiff rule in the example given, the jury should compensate the plaintiff for the entire pain and disability resulting from the defendant's fault but not for any pre-existing pain and disability.

*Waits*, 572 N.W.2d at 577–78 (third emphasis added).

Rodriguez does not challenge the giving of the eggshell plaintiff instruction. In fact, she requested that instruction. And as stated by the *Waits* court, it is not reversible error to submit both instructions to the jury where there is a factual basis to do so. *Id.* at 578. Here, the jury could have determined Rodriguez was asymptomatic or symptomatic but without the financial means to obtain medical treatment that she may have needed. Both Instructions 25 and 26 permit an award

of damages if the jury determined damages were caused by the defendant.[2]  Under the circumstances of this case, we find no reversible error occurred as a result of the jury instructions.

*Motion for new trial.* Here, the jury concluded Spenner, though negligent, did not cause any of Rodriguez's damages.  This was a low-speed, low-impact, no-property-damage collision.  Despite the opinions of Rodriguez's medical providers and experts,[3] the jury was free to reject that testimony.  *See Crow v.*

---

[2] We note neither party referenced Instruction No. 25 in their closing arguments nor does the record reflect the jury submitted any question concerning either Instruction Nos. 25 or 26 during their deliberations that might reflect confusion.

[3] According to Rodriguez, six treating physicians "concluded the collision was the cause of the injuries and need for treatment" that Rodriguez received in this matter.  She mischaracterizes some of the medical records and reads too much into others.  For example, Dr. Scott Murray, the emergency room doctor noted "acute motor vehicle collision with cervical and shoulder strain."  This is a far cry from a finding of causation.

Dr. Mark Kruse, who Rodriguez saw on July 1, 2013, several weeks after the accident, and wrote:

> Examination findings indicate the patient is suffering from an acute moderate sprain strain complex with multiple levels of spinal subluxations causing brachial radiculitis intercostal neuritis and lumbago.  Examination shows she suffers with a pre-existing discogenic spondylosis[,] a reverse cervical curve and osteoarthritis.  It is in my opinion based on a reasonable medical certainty this patient suffered a whiplash injury causing new injuries and aggravating her pre-existing condition.

Thus, Dr. Kruse accepted Rodriguez's report that the collision resulted in the "snapping of the neck" that aggravated a preexisting condition.

Rodriguez also cites a January 1, 2014 record by Dr. Sharon Vande Vegte with the notation of neck pain during "2 month recheck for [motor vehicle accident] MVA" and a December 31, 2013 record by Dr. Dustin Sorenson of "pain that is a result of an accident."  These notations may be nothing more than recitations of reports by Rodriguez.

Dr. Matthew Johnson testified that though "the underlying changes in the spine were not caused by the accident," if Rodriguez was not symptomatic and not having any pain prior to the accident and then had symptoms after the accident, "then the accident caused some type of trauma or injury to the nerve that continued to cause pain."

Finally, Rodriguez points to testimony by Dr. Steven Stokesbary, who opined Rodriguez sustained a "classic seat belt injury"—"a left shoulder impingement with rotator cuff tear, likely caused by the accident."  We observe Dr. Stokesbary testified:

> Most of what I determine [causation of injury] on are what the patient reports to me as what happened during the accident, how they were hit, assuming it was a vehicle accident, or how the vehicle was hit, or how their vehicle hit something else, some other object, what happened during

*Simpson*, 871 N.W.2d 98, 107 (Iowa 2015) ("It is well-settled that the law requires a jury to consider expert testimony in the same manner it considers any other testimony. The jury may accept an expert's testimony or reject it." (citations omitted)).

> A district court has broad discretion in deciding whether to grant or deny a new trial on the ground that the verdict failed to administer substantial justice between the parties. We will find an abuse of discretion only when a district court has exercised its discretion "'on grounds clearly untenable or to an extent clearly unreasonable.'" When the evidence amply supports the verdict reached by the jury, a district court abuses its discretion when it grants a new trial because it would have reached a different result.

*Id.* at 108 (citations omitted). There was substantial evidence from which the jury could find the collision did not cause Rodriguez damage following the collision.

Because the evidence does support the verdict reached by the jury, we affirm.

**AFFIRMED**.

---

the collision, if they can recall, and then any emergency reports that I might see.