# IN THE COURT OF APPEALS OF IOWA

No. 19-1983
Filed April 14, 2021

**ROBYN MENGWASSER,**
Plaintiff-Appellant,

**vs.**

**JOSEPH COMITO and CAPITAL CITY FRUIT COMPANY,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Plaintiff Robyn Mengwasser appeals the district court's denial of her motion for a partial new trial. **AFFIRMED.**

Bruce H. Stoltze and John Q. Stoltze of Stoltze & Stoltze, PLC, Des Moines, and Jeff Carter and Zachary C. Priebe of Jeff Carter Law Offices, P.C., Des Moines, for appellant.

Jeffrey D. Ewoldt and Jessica A. Eglseder of Hopkins & Huebner, P.C., Des Moines, for appellees.

Heard by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Robyn Mengwasser appeals the denial of her motion for a partial new trial.[1] Mengwasser's motion followed a jury trial on her personal injury claim against Joseph Comito and Capital City Fruit Company.[2] Mengwasser's claim arose from a 2015 car accident. Comito, driving a company vehicle owned by Capital City Fruit Company, rear-ended Mengwasser while her vehicle was stopped at an intersection. The jury found the defendants at fault and awarded Mengwasser total damages of $12,705: $10,950 for past pain and suffering and $1755 for past loss of function of mind and body. The jury awarded no damages for future medical expenses, future pain and suffering, future loss of function of mind and body, or future loss of earning capacity.

Supporting her request for a new trial on damages only, Mengwasser presents five claims of error on appeal, tracking the claims she presented in her motion for a partial new trial. She claims the district court erred by (1) limiting the testimony of Dr. Randy Dierenfield; (2) refusing to submit an eggshell plaintiff instruction to the jury; (3) refusing to grant a partial new trial on the basis the jury verdict was logically inconsistent; (4) granting Comito's second motion in limine, excluding evidence of medical treatment Mengwasser received shortly before trial; and finally, (5) granting in part Comito's post-trial application for taxation of costs under Iowa Code chapter 677 (2019).

---

[1] Mengwasser asks we remand this case for a partial new trial to address whether she was entitled to future damages, while leaving the verdict undisturbed as to Comito's fault and past damages.

[2] At times, we use "Comito" to refer to just Joseph Comito and other times we use it to refer to both defendants collectively.

**I. Factual Background and Earlier Proceedings.**

On September 28, 2015, Mengwasser was stopped at an intersection when Comito rear-ended her. Comito estimates his speed was five miles per hour at the time of impact. Vehicle damage was minor. Mengwasser and Comito pulled into a nearby parking lot to discuss the accident and exchanged contact information. Neither party reported injuries or contacted police or paramedics. Mengwasser experienced neck pain later that night and sought treatment at an emergency department.[3] She continued receiving treatment for neck pain up to the time of trial.

About two years later, Mengwasser filed a petition at law and jury demand[4] seeking damages for past and future (1) medical expenses; (2) physical and mental pain and suffering; (3) loss of wages and future earning capacity; and (4) loss of mind and body. Comito answered denying the claims and asserting certain affirmative defenses.

Several important deadlines originated from the trial scheduling and discovery plan. The dates important to the appeal issues are part of this procedural timeline:

On November 26, 2018, Mengwasser's expert designations were due. Mengwasser filed her first designation of expert witnesses, designating "all treating

---

[3] The emergency department providers assessed Mengwasser on the date of the accident and determined she was experiencing acute neck pain. Providers took a CT scan of the cervical spine and found Mengwasser had cervical spinal stenosis, meaning narrowing of the spinal canal. Her condition had worsened since a previous CT scan in 2006. Mengwasser was discharged that night and told to follow up with a primary care provider.

[4] The petition was amended in December 2018.

medical personnel identified in discovery and medical records as *percipient*[5] witnesses." (Emphasis added.) This included her chiropractor, Dr. Randy Dierenfield, who provided treatment from 2015-2019. She also designated Dr. Jacqueline Stoken, a non-treating physician, as an expert witness.

On December 26, 2018, Mengwasser's expert witness disclosures and reports were due. Dr. Stoken's report, following her July 2018 independent medical examination of Mengwasser, was timely produced. No other expert reports were served.

On January 25, 2019, Comito's expert designations were due.

On February 24, 2019, Comito's expert witness disclosures were due.

On, March 4, 2019, Mengwasser produced a February 22, 2019 report authored by Dr. Dierenfield. Dr. Dierenfield treated Mengwasser from 2015-2019. The report contained his opinions on causation as well as Mengwasser's loss of function and ability to work.

On March 12, 2019, Comito offered to confess judgment for the sum of $25,000.

On March 26, 2019, Mengwasser designated rebuttal expert witnesses.

On May 29, 2019, Comito moved to exclude the newly designated rebuttal witnesses and Dr. Dierenfield's opinions on causation and permanency of injury,

---

[5] Merriam-Webster dictionary defines *percipient* as "one that perceives." *Percipient*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/percipient (last visited Mar. 8, 2021).

noting that only Dr. Stoken's expert opinions were timely produced by the December 26, 2018 deadline.[6]

On May 30, 2019, Mengwasser served her second supplemental answer to interrogatories alerting Comito to a follow-up appointment with Dr. Michael Jackson on May 29. She also gave notice of an MRI scheduled for early June. No records were produced related to this treatment.

On June 14, 2019, the district court granted Comito's May 29 motion in its entirety, excluding the opinions of Dr. Dierenfield on causation and permanency.[7]

On June 17, 2019, in a second motion in limine, Comito moved to exclude evidence of new medical treatment produced "at the eleventh hour before trial."

Six days later, on June 23, 2019, Mengwasser produced exhibit 21, which contained ninety-eight pages of progress notes and the results from diagnostic testing performed on various parts of her body. The district court excluded evidence concerning the May 29, 2019 treatment report and the June 7, 2019 MRI that were not previously produced until the day before trial.

Trial took place from June 24 through June 28, 2019. On July 1, the district court entered judgment against Comito in the amount of $12,705.

With a verdict less than the $25,000 offer to confess judgment, Comito moved to tax costs pursuant to Iowa Code chapter 677. Mengwasser contested the application.

---

[6] Comito also moved to strike a report produced on May 24, 2019, authored by Scott Meyer, a physician's assistant who provided treatment to Mengwasser, but that ruling, which was favorable to Comito, is not a subject of this appeal.

[7] Mengwasser does not appeal the district court's order excluding the opinions from three rebuttal experts.

Next, Mengwasser timely moved for a partial new trial pursuant to Iowa Rule of Civil Procedure 1.1004. A hearing on both post-trial motions was held on August 21, 2019. On November 10, 2019, the court issued an order denying Mengwasser's motion for new trial and granting in part Comito's application for taxation of costs pursuant to section 677.10. This appeal followed.

**II. Standard of Review and Preservation of Error.**

As to Mengwasser's first claim, arguing the court should not have granted Comito's motion to strike reports and opinion testimony of Dr. Dierenfield, we review for an abuse of discretion.

> We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. Thus, we will reverse a decision by the district court concerning the admissibility of expert opinions only when the record shows 'the court exercised [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'

*Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 685 (Iowa 2010) (alteration in original) (citation omitted) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). Comito agrees error was preserved on this issue.

Next, Mengwasser contends the court erred in declining to submit an "eggshell plaintiff" instruction to the jury. Absent a discretionary component, we review a trial court's refusal to give a requested jury instruction for correction of errors at law. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). "[W]e will not reverse the district court's failure to give a requested jury instruction unless it prejudices the party requesting the instruction." *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 920 (Iowa 2017). Comito agrees error was preserved on this claim.

Third, pointing to the lack of future damages awarded, Mengwasser argues the jury verdict was inconsistent and the district court erred by denying her motion for a partial new trial on that ground. Error was preserved by Mengwasser's motion for partial new trial. "Generally, the trial court has some discretion when faced with inconsistent answers in a verdict." *Clinton Physical Therapy Servs.*, *P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). "However, the question whether a verdict is inconsistent so as to give rise to the exercise of that discretion is a question of law." *Id.* Thus, we review for correction of errors at law.

Fourth, Mengwasser claims the district court erred in granting part of Comito's second motion in limine, excluding evidence of her most recent medical treatment. Here, the ruling preventing any discussion of the medical records during trial is treated as an evidentiary issue. Comito argues that error was not preserved because Mengwasser never offered proposed exhibit 21, which contained the records, into evidence and never received an evidentiary ruling. We disagree. Mengwasser resisted Comito's motion to exclude the recent medical records at trial, and she included this claim in her motion for a partial new trial. "We review evidentiary rulings for an abuse of discretion." *Anderson v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018).

Finally, Mengwasser objects to the taxation of certain court costs. She argues the court erred in granting Comito's application for taxation of costs under Iowa Code chapter 677, involving the videographer and videoconferencing fees and the expert fees for the accident reconstruction experts. The parties dispute whether error was preserved as to the expert fees. "We review the district court's interpretation of chapter 677 for legal error." *CSS2 Enter., Inc. v. Farmers Coop.*

*Co.*, No. 14-1686, 2015 WL 4935834, at *4 (Iowa Ct. App. Aug. 19, 2015). Then to answer the question whether the deposition costs are "necessarily incurred," we review the district court's determination for an abuse of discretion. *EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 786 (Iowa 2002) (interpreting what costs were necessarily incurred under Iowa Rule of Civil Procedure 1.716[8]).

## III. Analysis.

### A. Opinions of Dr. Dierenfield.

Our first task involves evaluating the district court's discretionary call to limit Dr. Dierenfield's testimony. On March 4, 2019, Comito received an email from Mengwasser including a report dated February 22, 2019, written by Dr. Dierenfield in which he opined:

> I have made the following conclusions as Robyn Mengwasser's chiropractor, and as part of my routine diagnosis and treatment duties. I began treating Robyn in October of 2015 due to injuries she sustained in a motor vehicle collision. Robyn initially complained of neck pain due to a rear end collision in which she was an unaware belted passenger of the vehicle impacted.
> My initial diagnosis was a cervical strain/sprain. Robyn reported that her time working on a computer as a duty under duress. Robyn continued to receive chiropractic treatment at my office for these injuries throughout the rest of 2015, 2016, 2017, 2018 and up until the date of this report.
> Although Robyn's condition did improve during the course of her treatment, she ultimately reached maximum chiropractic improvement. In other words, Robyn's condition can be prevented from worsening with chiropractic treatment as needed, but she will never fully recover from her injuries. . . .

---

[8] Iowa Rule of Civil Procedure 1.716 provides:

> Costs of taking and proceeding to procure a deposition shall be paid by the party taking it who cannot use it in evidence until such costs are paid. The judgment shall award against the losing party only such portion of these costs as were necessarily incurred for testimony offered and admitted upon the trial.

I have concluded at this time that Robyn's pain and functional limitations with respect to her cervical injury are more likely than not the result of the September 2015 motor vehicle collision. Further, I have concluded that her diminished functionality has impacted her ability to perform her work since she is unable to sit for long periods of time.

While Dr. Dierenfield was a treating doctor and Mengwasser timely designated all treating doctors as expert witnesses, Mengwasser did not serve the opinion report on causation and loss of function by the December 26, 2018 deadline. Comito moved to exclude Dr. Dierenfield's report and preclude him from testifying about causation and loss of function. Comito pointed to the requirements under Iowa Rule of Civil Procedure 1.500(2)(b). Rule 1.500(2)(b) requires, in addition to expert disclosures, a written report from witnesses "retained or specially employed to provide expert testimony." The report must contain:

> (1) A complete statement of all opinions the witness will express and the basis and reasons for them.
> (2) The facts or data considered by the witness in forming the opinions.
> (3) Any exhibits that will be used to summarize or support the opinions.
> (4) The witness's qualifications, including a list of all publications authored in the previous ten years.
> (5) A list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition.
> (6) A statement of the compensation to be paid for the study and testimony in the case.

Mengwasser argues rule 1.500(2)(b) does not apply because Dr. Dierenfield was not an expert retained in anticipation of litigation. Instead, she asserts Dr. Dierenfield was simply her treating physician and thus qualifies as a

witness who did not need to provide a written report under rule 1.500(2)(c).[9]  More specifically, because Dr. Dierenfield was not an "expert," Mengwasser did not need to submit his written report under rule 1.500(2)(b); instead service of the report on March 4 amounted to an expert disclosure submitted within ninety days of trial in compliance with rule 1.500(2)(d).[10]

But the label assigned to the physician does not necessarily dictate their role for litigation purposes.  *See Morris-Rosdail v. Schechinger*, 576 N.W.2d 609, 612 (Iowa Ct. App. 1998) (noting a treating physician may begin to assume the expert role "when a treating physician begins to focus less on the medical questions associated in treating the patient and more on the legal questions which surface in the context of a lawsuit").  And a treating physician "ordinarily is not required to formulate [an opinion on causation] in order to treat the patient." *Hansen v. Cent. Iowa Hosp. Corp.*, 686 N.W.2d 476, 482 (Iowa 2004).

Mengwasser maintains Dr. Dierenfield did not form the opinions and conclusions of law stated in his February 2019 report in anticipation of litigation. Rather, she argues Dr. Dierenfield formed his opinions and conclusions through the course of his treatment of her from 2015 up to the start of trial.  And at oral

---

[9] Rule 1.500(2)(c) states:
> *Witnesses who do not need to provide a written report.*  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (1) The subject matter on which the witness is expected to present evidence . . . .
> (2) A summary of the facts and opinions to which the witness is expected to testify.

[10] Under rule 1.500(2)(d)(1), "A party must make [expert] disclosures at the times and in the sequence set forth in the court's trial scheduling order.  If not otherwise ordered, expert disclosures shall be due: [n]o later than 90 days before the date set for trial . . . ."

argument, Mengwasser directed us to Dr. Dierenfield's initial notes following the collision.[11] But after a full review of the treatment records, other than the first reference to her car accident, Dr. Dierenfield does not directly tie his treatment to any particular cause or tie Mengwasser's loss of function to the 2015 car accident. At trial, Dr. Dierenfield summarized his knowledge of the cause of injuries as follows:

> Q. Doctor, you've not offered an opinion in your treatment notes as far as the cause of this condition; correct? A. On day one when I formed the notes, that was everything that the patient said. So I, apparently, don't have anything in the notes saying that.
> Q. Okay. And so what the patient reported to you was what you consider the subjective complaint; correct? A. Correct.
> Q. And it's kind of something you just take her word for it? A. Right.

Likewise, because she was at maximum medical improvement, Dr. Dierenfield testified he released Mengwasser from his care in May 2018. Thus, the opinions developed in the February 2019 report were not arrived at as a necessary part of Mengwasser's ongoing treatment. Instead, the doctor's later produced report addresses subjects that are within the scope of expert testimony. *See Day v. McIlrath*, 469 N.W.2d 676, 677 (Iowa 1991) ("We believe a treating physician ordinarily focuses, while treating a patient, on purely medical questions rather than on the sorts of partially legal questions (such as causation or percentage of disability) which may become paramount in the context of a lawsuit.").

---

[11] The treatment notes, authored by Dr. Dierenfield on October 5, 2015, reference Mengwasser's belief that the car accident was the cause of her injuries. The doctor addressed an article generally discussing how rear-end collisions can cause greater injuries to unaware passengers with fastened seatbelts, but he did not explicitly say this was the case with Mengwasser. He did not conclude at that point in treatment that her symptoms were permanent.

Comito offered no objection to testimony by Dr. Dierenfield about the *treatment* of Mengwasser. To that subject matter, the court agreed Dr. Dierenfield could testify. The district court, granting Comito's motion to strike, stated:

> Contrary to plaintiff's assertions, Dierenfield's opinions (as to causation and loss of function and its impact on plaintiff's ability to perform her work) . . . were not formed or stated during the course of [his] treatment of plaintiff and certainly were not disclosed or even revealed in their respective medical records as of plaintiff's December 26, 2018 deadline for making expert disclosures. Therefore, defendants' motion to strike is GRANTED as to those specific opinions. *However, it should be noted that the foregoing ruling does not prohibit said witnesses' testimony regarding their actual medical treatment of plaintiff.*

(Emphasis added).

Absent the late report, Dr. Dierenfield focused on the treatment of Mengwasser and with the report, "assume[d] a role in litigation analogous to . . . a retained expert" offering opinions and conclusions as to causation and loss of function. See *Day*, 469 N.W.2d at 677. His opinions and conclusions were not produced until March 4, 2019, well past the December 26, 2018 deadline for disclosure of expert reports. Because those expert opinions came late and the district court did not preclude Dr. Dierenfield from testifying about his treatment, we find no abuse of discretion.

**B. The "Eggshell Plaintiff" Instruction.**

Mengwasser requested an "eggshell plaintiff" jury instruction, modeled after Iowa Civil Jury Instruction 200.34 (titled previous infirm condition), stating:

> If Robyn Mengwasser had a neck injury making her more susceptible to injury than a person in normal health, then the defendant is responsible for all injuries and damages which are experienced by Robyn Mengwasser that are caused by defendant's actions, even though the injuries claimed produce a greater injury

> than those which might have been experienced by a normal person under the same circumstances.

Comito argued successfully that the instruction was not warranted from the evidence presented. Mengwasser contends the degenerative disc disease found in her neck was a previous infirmed condition making her an "eggshell plaintiff." Because of that status she asserts her neck was more susceptible to injury and the jury should have been so instructed.

"Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994). "The verb 'require' is mandatory and leaves no room for trial court discretion." *Alcala*, 880 N.W.2d at 707. Courts may only submit an issue to the jury if supported by substantial evidence. *See Kinseth v. Weil-McLain*, 913 N.W.2d 55, 75 (Iowa 2018). "Evidence is substantial enough to support a requested jury instruction when a reasonable mind would accept it as adequate to reach a conclusion." *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996). "In weighing the sufficiency of the evidence, we give it the most favorable construction it will bear in favor of the party seeking submission." *Id.*

To establish sufficient proof to submit the instruction, Mengwasser directs us to an excerpt from a report authored by one of her expert witnesses, Dr. Stoken. In addressing whether Mengwasser had "any preexisting symptomatic or nonsymptomatic conditions that were aggravated by the collision," Dr. Stoken answered, "Robyn did have neck pain from 2006-2008. She had mild degenerative disc disease in the cervical spine which was materially aggravated by the collision." In addition, Dr. Stoken testified at trial:

Q. Did you form any conclusions with respect to any symptomatic or nonsymptomatic preexisting conditions that Robyn may have, and were those aggravated by this collision in 2015? A. She does have a mild degenerative disc disease in the cervical spine, but it was—and it was materially aggravated by the collision.

Q. What is degenerative disc disease, Dr. Stoken? A. That's some arthritis that's occurring, and the disc—what happens is that the disc, when you're young, is full of water, and it's nice and puffy. But as we age, it gets harder and loses the water, so it becomes—so you start developing some arthritis.

Q. Is that something that typically everyone has? A. Yes.

And Mengwasser points to an excerpt from a report authored by Comito's expert,

Dr. Todd Harbach, who performed an independent medical evaluation of

Mengwasser. He opined:

[She] shows degeneration, predominantly at the C5-6 disk space. It was degenerative in year 2007/2008, and follow up studies at the time of her accident showed further degeneration of that disk level. [She] also demonstrated facet joint arthrosis at multiple levels which were also noted in her earlier studies in 2007/2008. . . .

. . . .

I believe it is a reasonable deduction that the motor vehicle accident sustained on September 20, 2015, aggravated [her] preexisting degenerative conditions. . . .

. . . .

The aggravation cannot be objectively identified on any study [that was done after the accident]. I do not believe that the injury accelerated her to . . . an end that she would not have reached naturally on her own.

Based on this record the district court instructed the jury on the law concerning an

aggravated injury.[12] *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 577

---

[12] Instruction 15 provided:

If you find Robyn Mengwasser had a physical ailment or disability before the subject collision was aggravated by the subject collision causing further suffering then she is entitled to recover damages caused by the aggravation. She is not entitled to recover for any physical ailment or disability which existed before the subject collision or for any injuries or damages which she now has which were not caused by the subject collision

(Iowa 1997) (noting the distinction "between 'a pre-existing condition' that was made worse, i.e. aggravated, by the accident, and 'a prior condition' that made the plaintiff more susceptible to injury").  After reviewing the evidence, the district court confirmed there was not sufficient evidence warranting the instruction, stating:

> Then getting back to plaintiff's one objection which was the failure to include the previous-infirmed condition instruction, there is no evidence that the court can recall, nor has any evidence been identified by either of the parties, that would indicate where there was any opinion given by an expert witness and I think that's what would be required here that there was any kind of previous condition that Miss Mengwasser had that made her more susceptible to the injuries that she allegedly suffered in the accident in question.  I don't think that that's anywhere in the record and so that's why I am not including that instruction.

We agree with the district court.  The eggshell plaintiff rule is an exception to the general rule, applying "only when the pain or disability arguably caused by another condition arises *after* the injury caused by the defendant's fault has lighted up or exacerbated the prior condition."  *Waits*, 572 N.W.2d at 577.  But evidence is required to establish that the pain or disability is greater than the injured person would have suffered in the absence of the prior condition.  *Id.* at 578.  Here, no substantial evidence tied Mengwasser's prior condition to a greater susceptibility to injury.  *See Benn v. Thomas*, 512 N.W.2d 537, 540 (Iowa 1994) (holding eggshell plaintiff instruction properly given where plaintiff introduced substantial medical testimony of enhanced risk of injury because of prior infirm condition); *Bowers v. Grimley*, No. 08-0484, 2009 WL 139570, at *9 (Iowa Ct. App. Jan. 22, 2009) (refusing to give eggshell plaintiff instruction without substantial medical evidence that plaintiff was more susceptible to injury due to pre-existing condition).

Because the instruction was not supported by the evidentiary record, we find no error in the district court's refusal to give the jury an eggshell plaintiff instruction.

**C. Inconsistent Verdict.**

For her next claim of error, Mengwasser argues the court erred in denying her motion for a partial new trial because the jury verdict was inconsistent. Based on the evidence at trial, she claims it was logically inconsistent for the jury to award zero damages for future medical expenses, future pain and suffering, future loss of function of mind and body, and future loss of earning capacity. Mengwasser rests her claim on the repeated assertion that all the doctors involved in this case agreed her injuries were permanent.

> A new trial may be granted, and the jury verdict set aside, when the verdict is so logically and legally inconsistent it is irreconcilable in the context of the case. In assessing whether the jury verdict is inconsistent, we are mindful that a jury's verdict is to be liberally construed to give effect to the intentions of the jury and to harmonize the verdict if possible. The test is whether the verdict can be reconciled in any reasonable manner consistent with the evidence, its fair inferences, and in light of instructions of the court.

*Kalvik ex rel. Kalvik v. Seidl*, 595 N.W.2d 136, 139 (Iowa Ct. App. 1999) (citations omitted).

As the finder of fact, juries are free to accept or reject evidence presented during a trial. *See Blume v. Auer*, 576 N.W.2d 122, 125-26 (Iowa Ct. App. 1997). While Dr. Stoken's testimony was much more conclusive, as she believed Mengwasser's injuries were permanent, the jury did not have to accept it. "[A] jury is free to accept or reject any testimony, including uncontroverted expert testimony." *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). And contrary to

Mengwasser's position, there was disagreement among the expert witnesses (namely Dr. Harbach and Dr. Stoken) regarding permanent injury. Dr. Harbach's opinion regarding Mengwasser's degree of permanent injury was far more nuanced than she suggests. Relying on his experience and his medical examination of Mengwasser, Dr. Harbach stated in his report, "I would expect such an injury to be a temporary aggravation, and it is unusual that the patient would continue to have as many symptoms as she has today now three and one-half years later." When asked about this portion of the report, Dr. Harbach confirmed it was "[s]tatistically very unlikely." In his opinion, 97.5% of people with Mengwasser's injuries would recover. When asked directly whether he believed Mengwasser's injuries, conditions, or symptoms were permanent, Dr. Harbach replied, "All right. So I went based on basically what she was telling me . . . she thought that she had some permanency to her symptoms, although the records don't support that well or very well at all." Instead, Dr. Harbach described Mengwasser's condition as "the normal progression of degeneration" or in other words, natural aging of the body. Further, in his view, her condition would have reached the same point despite the car accident.

What is more, some medical records conflicted with Mengwasser's report of continuing neck symptoms. During some medical appointments, Mengwasser either reported being "much improved" or mentioned no issues with her neck when asked to provide a present history of illness. And the jury heard that Mengwasser suffered neck pain at times before the 2015 collision. So, even though Mengwasser reported to Dr. Stoken her neck pain ranged from one to three out of

ten, with zero being no pain, a jury might assume Mengwasser was back to pre-accident pain levels.

Here, there was conflicting testimony and evidence presented regarding the permanency of Mengwasser's injuries and symptoms. The district court found the verdict to be "consistent with and adequately supported by the evidentiary record created at trial." A jury could evaluate the minor physical damage to the vehicle, the conflicting medical record notations, and Mengwasser's history and current pain complaints and conclude the collision did not cause future injury or damages. *See Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 892 (Iowa 1996) (noting failure to award future damages even though past damages were given is within the province of the jury). Here it was within the jury's discretion, based on substantial evidence from the record, to award zero damages for future medical expenses, future pain and suffering, future loss of function of mind and body, and future loss of earning capacity. In sum, we find the verdict was consistent with the evidence a jury could believe and decline Mengwasser's invitation to disturb it.

**D. Exclusion of Recent Treatment Evidence.**

Before the June 24, 2019 trial, Mengwasser treated with Dr. Michael Jackson on May 29 and underwent an MRI of her cervical spine on June 7. Mengwasser alerted Comito of these appointments on May 30 by serving her second supplemental answers to interrogatories. However, she did not produce any records of these treatments until three days before trial. Under the trial scheduling and discovery plan, exhibits were required to be exchanged seven days before trial. Likewise, Dr. Jackson was not on the trial witness list for Mengwasser.

Comito moved to preclude any testimony or other evidence regarding Mengwasser's recent medical treatment on the basis of unfair surprise and emphasized:

> [A]s of the date this Motion was filed, the medical records pertaining to Plaintiff's May 29 and June 7 appointments were not available to Defendants. As such, Defendants' counsel has insufficient knowledge of what transpired at these visits; nor has Defendants' medical expert, Dr. Harbach, been provided with these new records. Dr. Harbach completed his independent medical exam of Plaintiff on March 22, 2019 and obviously did not have access to information regarding the May 29 and June 7 medical visits before he prepared his IME report.

Both parties made their case to the court on the first day of trial. Mengwasser argued, "[T]his is something that has been reviewed by Dr. Stoken, and it doesn't change her opinions at all. So there's no unfair prejudice in that sense." She also pointed to a supplemental report from Dr. Stoken sent to the defendants the day before, in which Dr. Stoken stated she had reviewed the latest records.[13] The court conditionally granted Comito's motion. "Well, I'm going to grant [Defendants' motion], and let's take that up before we see any of that evidence. I want to know exactly what we're talking about, and I want to have an opportunity to review her report myself. So that is granted until we have revisited it."

Later, during Dr. Stoken's trial testimony, Mengwasser tried to elicit testimony regarding the recent treatment. Comito objected, pointing to the court's earlier ruling. At this point Mengwasser modified her argument, "[M]y position is simply this, Judge: Dr. Stoken was just asked about Robyn Mengwasser's deposition testimony with respect to future treatment. Dr. Stoken is aware of future

---

[13] In the same report, Dr. Stoken also stated she reviewed records and reports from two other individuals who were excluded as rebuttal witnesses.

treatment [Mengwasser] had since her deposition. I think that opens the door to her answering those questions." Ultimately, the court sustained Comito's objection to the exhibit, marked as exhibit 21, stating "there will be no further examination . . . from this witness or any other as to the content of exhibit 21."

Under the abuse-of-discretion standard, we find no abuse of discretion in the court's decision to exclude the evidence of recent treatment. *See Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014) (confirming the trial court has broad discretion related to rulings allowing or disallowing expert testimony challenged as untimely), *overruled on other grounds by Alcala*, 880 N.W.2d at 708. With the "eleventh hour" disclosure, Comito had no ability to rebut or comment on the new evidence. All things considered, the jury heard references to recent treatment of Mengwasser. Dr. Stoken testified Mengwasser required future medical treatment and that she reviewed a May 29 record of recent treatment requiring an ultrasound. And Mengwasser's husband testified his wife sought treatment for her neck in the "last few months" prior to trial, including an "ultrasound" test. Given the district court's broad discretion and its effort to balance the respective rights of the parties, we find the court did not abuse its discretion in excluding the challenged evidence.

**E. Taxation of Costs.**

Finally, Mengwasser disputes the district court's taxation of costs under Iowa Code section 677.10. First, she argues she should not have been taxed for costs related to videographer and videoconferencing fees incurred from the depositions of Comito's accident reconstruction experts. The first argument is

those expenses are not mentioned in Iowa Code section 625.14.[14] Even so, that section references "the necessary expenses of taking depositions." Iowa Code § 625.14. But there are hurdles to clear in the effort to recover deposition costs. And we have analyzed necessary deposition costs that are permitted under Iowa Rule of Civil Procedure 1.716. *See Hughes v. Burlington N. R.R. Co.*, 545 N.W.2d 318, 322 (Iowa 1996) (noting deposition costs that are taxable from a failure to accept an offer to confess judgment are limited to those allowed under Iowa Rule of Civil Procedure 157(a), now numbered rule 1.716). First, "for a party to recover the cost of a deposition at the conclusion of a trial, the deposition must be introduced into evidence either in whole or in part." *Long v. Jensen*, 522 N.W.2d 621, 624 (Iowa 1994). Here, the videotaped depositions were introduced in whole during the trial. The court's post-trial order concerning taxation of costs stated:

> Defendants seek to have taxed as costs the expenses incurred for obtaining the testimony, by video deposition, of Dr. Harbach of Iowa Orthopedic and of Messrs. Sebastian Bawab and Michael Woodhouse of Vector Dynamics. Pursuant to [rule] 1.716, these expenses would include only such portions of said video depositions as were necessarily offered and admitted at trial. However, it is undisputed that the entire video depositions of each of these three witnesses were offered and admitted at trial herein.

Once the threshold requirement involving the use of the deposition at trial is met, we afford the district court discretion to tax the deposition expense as a cost. *See Woody v. Machin*, 380 N.W.2d 727, 730 (Iowa 1986). Still Mengwasser

---

[14] Section 625.14 provides:
> The clerk shall tax in favor of the party recovering costs the allowance of the party's witnesses, the fees of officers, the compensation of referees, the necessary expenses of taking depositions by commission or otherwise, and any further sum for any other matter which the court may have awarded as costs in the progress of the action, or may allow.

contends the district court had no authority to tax videotaping and video services as allowable deposition costs. This is not the first time video expenses have been taxed as costs in Iowa. *See, e.g.*, *Lake v. Schaffnit*, 406 N.W.2d 437, 442 (Iowa 1987) (finding no abuse of discretion in trial court taxing cost of video deposition to unsuccessful party under Iowa Code section 625.3); *In re Estate of Hetrick*, No. 11-1702, 2012 WL 3860749, at *3-4 (Iowa Ct. App. Sept. 6, 2012) (allowing charge for videotaping services as necessary expense); *Doty v. Olson*, No. 09-1852, 2010 WL 5050565, at * 5 (Iowa Ct. App. Dec. 8, 2010) (confirming video deposition expense as a taxable cost to unsuccessful party under Iowa Code section 677.10). With that guidance, we find no abuse of discretion by the district court in taxing as costs the videoconferencing and videographer expenses.

For the first time in her appellate brief, Mengwasser develops an argument that the fees related to testimony from crash reconstruction experts hired by Comito should not be taxed because the testimony was not necessary to the jury's decision. Granted the jury found Comito was at fault in causing the accident. But our rules of error preservation prohibit our consideration of this new theory. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court."). While Mengwasser objected to the costs of the video depositions of Comito's accident reconstruction experts, the only argument advanced was that depositions were not admitted into evidence and that chapter 625 did not allow taxation of videographer fees. "We will not affirm a ruling on a ground not urged in the district court." Even so, we find Mengwasser's argument unpersuasive.

**IV. Conclusion.**

Based on the above analysis, we affirm the district court's order denying Mengwasser's motion for a partial new trial.

**AFFIRMED.**